**MELMED LAW GROUP P.C.**
Jonathan Melmed, (SBN 290218)
jm@melmedlaw.com
Megan E. Ross (SBN 227776)
megan@melmedlaw.com
Hannah Becker (SBN 345452)
hb@melmedlaw.com
1801 Century Park East, Suite 850
Telephone: (310) 824-3828
Facsimile: (310) 862-6851
Attorneys for Plaintiff and the PAGA Settlement Group Members

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR AMBROSE, an individual, on behalf of herself, the State of California, as a private attorney general, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>US MED-EQUIP, LLC., a Texas Limited Liability Company; and DOES 1 TO 50,<br><br>        Defendants. | Case No. 1:23-cv-00114-SAB<br><br>**NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR APPROVAL OF PAGA SETTLEMENT**<br><br>[*Filed concurrently with Declaration of Jonathan Melmed; Proposed Order*]<br><br>STANLEY A. BOONE<br>U.S. MAGISTRATE JUDGE |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that as soon as this matter may be heard, at the United States District Court, Eastern District of California, before the Honorable Stanley A. Boone, Plaintiff Taylor Ambrose ("Plaintiff") will and hereby does move this Court for an order approving a settlement pursuant to the Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq*. ("PAGA").

This motion is based upon this the Memorandum of Points and Authorities; the Declaration of Jonathan Melmed in support thereof; the Stipulation and Agreement for PAGA Representative Action Settlement (the "Settlement Agreement"); the Proposed Order Granting Approval of PAGA Settlement and Entering Judgment; all other records, pleadings, and papers filed in this action; and upon such other evidence or argument as may be presented to the Court at the hearing of this motion.

Dated: December 19, 2023          **MELMED LAW GROUP P.C.**


                                  By:    /s/
                                         _____
                                         Megan E. Ross
                                         Attorneys for Plaintiff and the PAGA Settlement
                                         Group Members

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................................ 3

III.    SUMMARY OF PLAINTIFF'S CLAIMS ............................................................ 4

   A.    Plaintiff's Minimum Wage Claim ............................................................ 4

   B.    Plaintiff's Overtime Claim .................................................................... 5

   C.    Plaintiff's Rest Period Claim ................................................................. 5

   D.    Plaintiff's Meal Period Claim ................................................................ 7

   E.    Plaintiff's Reimbursement Claim ............................................................ 8

   F.    Plaintiff's Wage Statement Claim ........................................................... 9

   G.    Defendant's Failure to Pay Timely Wages .............................................. 10

IV.    THE PAGA AND ITS REQUIREMENTS ........................................................... 10

V.    THE SETTLEMENT AND DISTRIBUTION OF PAGA PENALTIES ......................... 12

   A.    TERMS OF THE SETTLEMENT AND DISTRIBUTION OF PAGA   PENALTIES
     12

   B.    THE DISTRIBUTION OF THE NET SETTLEMENT AMOUNT .......................... 12

   C.    PAYMENT AND THE NOTICE ............................................................... 13

   D.    SETTLEMENT ALLOCATION TO THE PAGA SETTLEMENT GROUP
     MEMBERS ......................................................................................... 13

   E.    THE RELEASE ................................................................................... 14

VI.    THE SETTLEMENT IS FAIR AND REASONABLE, AND WARRANTS COURT
APPROVAL ........................................................................................................ 15

   A.    Standards for Approval of a PAGA Settlement ....................................... 15

   B.    The Civil Penalties are Appropriate Under the Circumstances and Given
     Defendant's Convincing Arguments and Evidence ..................................... 16

VII.    THE REQUESTED ATTORNEYS' FEES AND LITIGATION COSTS ARE FAIR
AND  REASONABLE ............................................................................................. 19

   A.    PLAINTIFF'S COUNSEL ARE ENTITLED TO RECOVER ATTORNEYS'   FEES
     UNDER THE COMMON FUND DOCTRINE IN THIS QUI TAM    ACTION ............. 19

   B.    A FEE OF ONE-THIRD OF THE TOTAL SETTLEMENT AMOUNT IS    FAIR
     AND REASONABLE BASED UPON THE FACTORS DEVELOPED   BY THE
     COURTS AND SERVES THE PUBLIC POLICY OF    ATTRACTING COMPETENT
     COUNSEL TO LITIGATE THESE CASES ................................................... 23

VIII.    SUBMISSION TO THE LWDA ...................................................................... 26

IX.    THE SETTLEMENT ADMINISTRATOR ........................................................... 27

X.    CONCLUSION ............................................................................................. 27

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

TABLE OF AUTHORITIES

<u>Cases</u>

*Arias v. Superior Court*, 46 Cal.4th 969 (2009) ................................................................. 3, 13, 15

*Bank of America v. Cory* (1985) 164 Cal.App.3d 66 .......................................................... 24

*Bell v. Farmers Insurance Exchange* (2004) 115 Cal.App.4th 715 ................................... 25

*Brinker Rest. Corp. v. Sup. Ct.* (2012) 53 Cal.4th 1004 ..................................................... 7

*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43 ........................................................... 25

*Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.* (2005) 127 Cal.App.4th 387 26

*Dunk v. Ford Motor, Co.* (1996) 48 Cal.App.4th 1794 ....................................................... 25

*Harris v. Marhoefer* (9th Cir. 1994) 24 F.3d 16 ............................................................... 27

*Iskanian v. CLS Transp. Los Angeles,* LLC (2014) 59 Cal.4th 348 ........................... 1, 3, 24

*Jutkowitz v. Bourns, Inc.* (1981) 118 Cal.App.3d 102 ....................................................... 25

*Laffitte v. Robert Half Int'l. Inc.* (2016) 1 Cal.5th 480 .............................................. 24, 26, 27

*Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19 ....................................... 25

*Mills v. Electric Auto-Lite Co.* (1970) 396 U.S. 375 .......................................................... 25

*People ex rel. Stratham v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487 .......... 23

*Sanders v. City of Los Angeles* (1970) 3 Cal.3d 252 ......................................................... 25

*Serrano III v. Priest* (1977) 20 Cal.3d 25 ........................................................................ 25

*Serrano v. Priest* (1977) 20 Cal.3d 25 ............................................................................. 25

*Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043 .............................................. 26

*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224 .......................................... 26

<u>Statutes</u>

*Amaral v. Cintas Corp. No. 2,* 163 Cal.App.4th 1157, 1209 (2008) ................................ 18

<u>Rules</u>

*Cabrera v. Advantage Sale & Marketing, LLC*, Case No. BC485259, 2013 WL 1182822 (Super. Ct. L.A. County, March 12, 2013) .................................................................................. 22

*Fleming v. Covidien Inc.* (C.D. Cal., Aug. 12, 2011, No. (OPX)) 2011 WL 7563047, at *4 ......... 18

*Penaloza v. PPG Industries Inc.*, Case No. BC471369, 2013 WL 2917624 at *2 (Super. Ct. L.A. County, May 20, 2013) ............................................................................................... 22

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

1                 <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2 **I.**   <u>**INTRODUCTION**</u>

3       This PAGA representative action stems from defendant US Med-Equip's ("Defendant")

4 alleged violations of Labor Code §§ 201, 202, 203, 204, 210, 226, 226.3, 226.7, 227.3, 256, 510,

5 512, 1174, 1185, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2802, 2804, California Code of

6 Regulations Title 8 Sections 11050 and11150, and California Industrial Commission Wage Order

7 4, as to *all individuals who are or were employed by Defendant as hourly paid or non-exempt*

8 *employees in California during the Covered Period* (the "PAGA Settlement Group Members"),

9 the "Covered Period" is defined as August 1, 2022, through December 16, 2023. A PAGA action

10 is a type of qui tam action filed on behalf of the state to assist it with labor law enforcement.

11 *Iskanian v. CLS Transp. Los Angeles,* LLC (2014) 59 Cal.4th 348, 380-382. As such, the state is

12 the real party in interest in a PAGA action. *Id.* at 382.

13       The State of California was timely served with a copy of the agreement negotiated between

14 the parties (the "Settlement Agreement") concurrently with this Motion to Approve the PAGA

15 Settlement.

16       Plaintiff and the PAGA Settlement Group Members contend that between August 1, 2022,

17 and the date the court grants PAGA approval (the "Covered Period"), Defendant violated Labor

18 Code §§ 201, 202, 203, 204, 210, 226, 226.3, 226.7, 510, 512, 1185, 1194, 1194.2, 1197, 1197.1,

19 1198, 1199, 2802, 2804, California Code of Regulations Title 8 Sections 11050 and 11150, and

20 California Industrial Commission Wage Order 4. Defendant has denied and continues to deny each

21 and every material factual allegation and alleged claims asserted in the Action and denies that

22 Plaintiff or any other alleged aggrieved employee has been harmed based on the allegations raised

23 in the Action. The Parties dispute the merits of the claims and defenses.

24       The Parties exchanged various documents and information that allowed both sides to

25 evaluate the potential exposure and potential risk, such as a review of policies related to the claims

26 alleged in the Action, a sample of time and pay records, and the necessary data to evaluate the

27 valuation of a PAGA settlement including number of PAGA Settlement Group Members and

28 number of pay periods at issue. During this process, Plaintiff's counsel analyzed, researched, and

1  investigated the potential issues, including matters related to the calculation of PAGA damages,

2  interviews of Plaintiff, trial management, and appellate issues and risks.

3      Now with a comprehensive Settlement Agreement that resolves the claims alleged in this

4  case, Plaintiff seeks this Court's approval of a $57,500.00 PAGA settlement involving

5  approximately 30 PAGA Settlement Group Members. The settlement merits full approval because

6  it fulfills the purpose of PAGA (*i.e.*, to deter violations of the Labor Code and secure obedience of

7  California's labor laws; to end ongoing violations of the Labor Code either through injunctive

8  relief or a defendant's voluntary changes in light of a PAGA action; and to provide relief that is

9  genuine, meaningful, and consistent with California's goal of benefitting the public through

10  enforcement of labor laws). The following table summarizes the allocation of the Total Settlement

11  Amount:

12
| **Total Settlement Amount of $57,500.00 Is Broken Down As Follows:** |
| --- |
| • Plaintiff's Counsel Attorneys' Fees not to exceed **$17,250.00** |
| • Plaintiff's Counsel Costs totaling **$10,519.50** |
| • Settlement Administration Costs, not to exceed **$2,850.00** |
| • Plaintiff's Incentive payment of **$5,000.00** |
| • Approximately **$21,880.50** for the Net Settlement Amount: |
|     ○ **25%** of the Net Settlement Amount for the PAGA Aggrieved Employee Payment (approximately **$5,470.13**) |
|     ○ **75%** of the Net Settlement Amount for the LWDA Payment (approximately **$16,410.37**) |

19      Because this is a PAGA-only settlement, the process for approval is fairly straight-forward:

20  "The superior court shall review and approve any settlement of any civil action filed pursuant to

21  this part." (Labor Code § 2699(1)(2).)  Based on the California Supreme Court's holdings in *Arias*

22  *v. Superior Court*, 46 Cal.4th 969 (2009) and *Iskanian v. CLS Transportation Los Angeles, LLC,*

23  59 Cal.4th 348 (2014), there is no requirement under PAGA for Plaintiff to establish the

24  requirements of class certification (*i.e.* numerosity, typicality, commonality and adequacy) nor is

25  there the usual two-step preliminary and final approval process as found in class actions.  Rather,

26  this PAGA-only settlement merely requires a one-step review and approval process.

27      For these reasons and those discussed below, the Parties now seek the Court's approval of

28  the Settlement.

**NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT**

1  II. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

2      On January 26, 2023, Plaintiff submitted a letter to the California Labor and Workforce

3  Development Agency ("LWDA") to notify the LWDA pursuant to the Private Attorneys General

4  Act of 2004, Labor Code section 2698, *et seq.* ("PAGA") of Plaintiff's intent to seek civil

5  penalties under PAGA for violations of Labor Code §§ 201, 202, 203, 204, 210, 226, 226.3, 226.7,

6  510, 512, 1185, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2802, 2804, California Code of

7  Regulations Title 8 Sections 11050 and11150, and California Industrial Commission Wage Order

8  4. A true and correct copy of the PAGA notice is attached to the JM Decl. as **Exhibit 2**. This

9  notice letter is required under Labor Code § 2699.3(a)(l)(A) as a prerequisite to bringing a PAGA

10 representative claim against an employer. JM Decl., ¶ 10. The LWDA did not respond to this

11 notice, thus allowing Plaintiff to file the instant lawsuit.  Lab. Code § 2699.3(a)(2)(A). *Id.*

12     On the same day, Plaintiff filed her class action complaint alleging causes of action for (1)

13 failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide rest periods

14 and pay missed rest period premiums; (4) failure to provide meal periods and pay missed meal

15 period premiums; (5) failure to maintain accurate employment records; (6) failure to pay wages

16 timely during employment; (7) failure to pay all wages earned and unpaid at separation; (8) failure to

17 indemnify all necessary business expenses; (9) failure to furnish accurate itemized wage statements;

18 and (10) violations of California's unfair competition law.  JM Decl., ¶ 11.

19     The Parties stipulated to allow Plaintiff to file a first amended complaint adding a single

20 cause of action for PAGA Penalties Pursuant to Labor Code § 2698 et seq. for violations of Labor

21 Code §§ 201, 202, 203, 204, 210, 226, 226.3, 226.7, 510, 512, 1185, 1194, 1194.2, 1197, 1197.1,

22 1198, 1199, 2802, 2804, California Code of Regulations Title 8 Sections 11050 and 11150, and

23 California Industrial Commission Wage Order 4 (the "Action"). JM Decl. ¶ 12. The first amended

24 complaint was deemed filed on April 13, 2023. JM Decl., ¶ 12.

25     Although Defendant denied the allegations and vowed to vigorously defend against them,

26 the parties agreed to attempt to reach a resolution. JM Decl. ¶ 13.  The Parties exchanged various

27 documents and information that allowed both sides to evaluate the potential exposure and potential

28 risk, such as a review of Defendant's policies related to the claims alleged in the Action and a

sample of time and pay records. *Id*. During this process, Plaintiff's counsel analyzed, researched, and investigated the potential issues, including matters related to the calculation of PAGA damages, interviews of Plaintiff, trial management, and appellate issues and risks. JM Decl. ¶ 14.

The Parties concluded that there were benefits associated with settling the Action and concluded, after considering the sharply disputed factual and legal issues involved in this litigation, the risks associated with further prosecution, the substantial benefits to be received pursuant to the compromise and settlement of the Action as set forth in the Settlement Agreement, as well as Plaintiff's individual claims. JM Decl. ¶ 15. The Parties believe that settlement on the terms set forth in the Settlement Agreement is in the best interest of the Plaintiff, the LWDA, the PAGA Settlement Group Members covered by PAGA, and Defendant, and is fair and reasonable. The Parties now present the Settlement Agreement to this Court for approval. *Id.*

### III. SUMMARY OF PLAINTIFF'S CLAIMS

#### A. Plaintiff's Minimum Wage Claim

Labor Code § 1197 states the California requirement that employees must be paid at least the minimum wage fixed by the Commission, and any payment of less than the minimum wage is unlawful. JM Decl. ¶ 20. Similarly, Labor Code § 1194 entitles "any employee receiving less than the legal minimum wage…to recover in a civil action the unpaid balance of the full amount of this minimum wage." The applicable IWC Wage Orders also obligate employers to pay each employee minimum wages for all hours worked. *Id.*

These minimum wage standards apply to each hour employees worked for which they were not paid. JM Decl. ¶ 21. Therefore, an employer's failure to pay for any particular hour of time worked by an employee is unlawful, even if averaging an employee's total pay over all hours worked, paid or not, results in an average hourly wage above minimum wage. *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 324. *Id.*

Here, Plaintiff alleges that she and the PAGA Settlement Group Members were not paid all wages for all hours worked due to Defendants' uniform payroll policies and practices that unfairly rounded employees' wages to the detriment of the PAGA Settlement Group Members, worked off-the-clock, and did not receive minimum wage for each hour worked. JM Decl. ¶ 22. Plaintiff

alleges that she and the PAGA Settlement Group Members did not receive duty-free meal periods within the first five hours of their work. *Id.* These missed meal periods were nevertheless subtracted from their work hours, as though they had taken a fully-compliant meal break. *Id.* Their time worked during these meal periods was thus fully unpaid. *Id.*

### B. Plaintiff's Overtime Claim

Labor Code section 510 states, "[e]ight hours of labor constitutes a day's work. JM Decl. ¶ 23. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. *Id.* Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee." *Id.*

Here, for the reasons stated above, Plaintiff alleges that she and the PAGA Settlement Group Members periodically worked hours that entitled them to overtime compensation under the law but were not fully compensated for those hours. Furthermore, for the reasons stated above, Plaintiff alleged that she and the PAGA Settlement Group Members worked certain hours for which they were not paid.  *Id.* Because Plaintiff and the PAGA Settlement Group Members typically spent eight hours or more working on "compensated" time, this uncompensated time often should have been compensated at the overtime rate.

### C. Plaintiff's Rest Period Claim

Pursuant to the applicable IWC Wage Order, an employer must authorize and permit all employees to take ten (10) minute duty free rest periods for every major fraction of four hours worked.  JM Decl. ¶ 25. Labor Code § 226.7 provides "an employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission ("IWC").  See *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal. 5th 257, 269 (concluding that "during rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time."). *Id.*

Here, Plaintiff alleges that Defendant failed to authorize or permit her and the PAGA Settlement Group Members to take duty-free rest periods of not less than ten (10) minutes for every major fraction of four (4) hours worked. JM Decl. ¶ 26. Specifically, Plaintiff alleges that Defendant maintains an unlawful policy requiring Plaintiff and the PAGA Settlement Group Members to remain on premises during their rest periods. *Id.* Thus, Plaintiff and the PAGA Settlement Group Members were not authorized or permitted to take compliant rest periods at any time during their employment with Defendant. *Id.*

Plaintiff argued that such control over employees during their rest periods is violative of the Wage Order. *See, Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257 (finding that rest periods by their very nature must be "duty free," and reasoning that an employee on a rest break who must be "at the ready, tethered by time and policy to particular locations or communications devices," is not "duty free" and concluding that "during rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time."). JM Decl. ¶ 27. Plaintiff maintains that Defendant's on-premises break policy is an across-the-board facially invalid policy that is certifiable both for meal and rest breaks and will trigger liability. *See, id.*; *see also Brinker Rest. Corp. v. Sup. Ct.* (2012) 53 Cal.4th 1004, 1033 (facially invalid rest break policy triggers across the board liability).[1]  Far from emphasizing that employees have the right to off-premises and completely duty-free meal and rest periods, the policy requires that employees may be required to remain on premises during meal and/or rest breaks.  JM Decl. ¶ 27. Such a policy is inconsistent with the requirement of *Brinker* and *ABM* that, in order to provide a meal or rest break under California law, employers must *advise* employees of their rights to compliant breaks under California law.  *See Godfrey v. City of Oakland Ports*, 230 Cal.App.4th 1267, 1285-6 (2014), review denied (February 11, 2015) ("AB does not meet the 'provide' standard because it provided no evidence showing drivers were, at a minimum, informed in any meaningful or consistent way that they could take a meal break, ***or the***

---

[1] As the California Supreme Court made clear in *ABM*, the same duty-free requirement applies to both meal and rest breaks: "Moreover, section 226.7's prohibition applies in identical fashion to meal *and* rest periods, with its premium-pay remedy (§ 226.7, former subd. (b)) triggered by the failure to provide either.

*definition of any such meal period.*"(emphasis added); *see also Ricaldai*, 878 F.Supp.2d 1028, 1044 (C.D. Cal. 2012) (employers in California must advise employees of their rights to take "a 30 minute meal break every workday of five hours or more, and to do so prior to the fifth hour of work", all of which is part of employees' "essential meal period rights"). The same is equally true of the duty-free status of rest and meal breaks. JM Decl. ¶ 27. *See also Brinker,* 53 Cal.4[th] at 1033 (stating in the rest break context that a there could be no waiver of a rest break that was required by law but never authorized by the employer: "if a break is not authorized an employee has no opportunity to decline to take it"). Thus, that an employer has an affirmative duty to advise employees in a meaningful way of their fundamental meal break rights (i.e., the timing, frequency and duty-free status of such breaks and when premium pay is available) under California law. *See also*, *Diaz v. Medline Industries, Inc.* (San Joaquin Superior Court) holding in the context of a motion for judgment on the pleadings that "…if the employer's policy prohibits leaving the work premises, this is control over the employee that violates Cal. Labor Code § 226.7 and Wage Order 9, as interpreted in Augustus..." (*Medline* Minute Order, p. 4). JM Decl. ¶ 27.

The failure to provide a compliant meal or rest break - or advise employees of same, which amounts to the same thing - gives rise to rest break premium claims. *See, e.g., Amaro v. Gerawan Farming, Inc.*, 2016 WL 3924400 (E.D. Cal. May 19, 2016) (certifying class of piece-rate agricultural workers for claims that they were not provided paid rest breaks in violation of Labor Code § 226.7 based on a uniform failure to advise that they would be paid separately and hourly for rest breaks). JM Decl. ¶ 28.

In addition to failing to authorize and permit compliant rest periods, Plaintiff asserted that Plaintiff and the PAGA Settlement Group Members were not compensated with one (1) hour's worth of pay at their regular rate of compensation when they were not provided with a compliant rest period in accordance with Labor Code § 226.7(b). JM Decl. ¶ 29.

**D. Plaintiff's Meal Period Claim**

Under California Labor Code Section 512 and the applicable IWC Wage Order, no employer shall employ any person for a work period of more than five (5) hours without providing a meal period of not less than thirty (30) minutes. JM Decl. ¶ 30. During this meal period of not

less than thirty (30) minutes, the employee is to be completely free of the employer's control and must not perform any work for the employer. *Id*. If the employee does perform work for the employer during the thirty (30) minute meal period, the employee has not been provided a meal period in accordance with the law. *Id*. Also, the employee is to be compensated for any work performed during the thirty (30) minute meal period. *Id*. Finally, an employer may not employ an employee for a work period of more than ten (10) hours a day without providing the employee with another meal period of not less than thirty (30) minutes. *Id*.

Here, Plaintiff alleges that Defendant failed to provide compliant meal periods to her and the PAGA Settlement Group Members. JM Decl. ¶ 31. Specifically, Plaintiff alleges that meal periods were all on-duty, in violation of Labor Code § 512. *Id*.

In addition to failing to provide compliant meal periods, Plaintiff and the PAGA Settlement Group Members were not compensated with one (1) hours' worth of pay at their regular rate of compensation when they were not provided with a compliant meal period in accordance with Labor Code § 226.7(b). JM Decl. ¶ 32.

### E.  Plaintiff's Reimbursement Claim

Plaintiff alleged that, at the direction of Defendant and/or with Defendant's knowledge and acquiescence, her and the PAGA Settlement Group Members have used their personal cell phones to for work related purposes. JM Decl. ¶ 33. For example, Plaintiff alleged that Defendant's supervising employees regularly contact Plaintiff and the PAGA Settlement Group Members for scheduling purposes. *Id*. Further, Plaintiff argued that she and the PAGA Settlement Group Members were responsible for their own transportation costs to and from their various work locations, necessary for work-related duties for Defendant. *Id*.  *Id*. Defendant required Plaintiff and the PAGA Settlement Group Members to shoulder the cost associated with business use of their personal cell phones and personal devices and personal vehicles. *Id*.

Defendant does not maintain an expense reimbursement policy and/or practice stating that Defendant will affirmatively reimburse Plaintiff and the PAGA Settlement Group Members for a reasonable portion of their monthly personal cell phone bills, protective gear, mileage, and other expenses necessarily incurred in their discharge of their duties, as required by *Cochran v.*

*Schwan's Home Service, Inc.*, 228 Cal.App.4th 1137 (Cal. Aug. 12, 2014) ("We hold that when employees must use their personal cell phones for work-related calls, Labor Code section 2802 requires the employer to reimburse them. Whether the employees have cell phone plans with unlimited minutes or limited minutes, the reimbursement owed is a reasonable percentage of their cell phone bills.") (reversing denial of class certification in cell phone reimbursement class action and setting forth the applicable law for these claims); *Aguilar v. Zep, Inc*., 2014 WL 4245988 *17 (N.D. Cal. Aug. 27, 2014) (granting plaintiffs' motion for partial summary judgment on the plaintiffs' cell phone reimbursement claim); *Ritchie v. Blue Shield of California*, 2014 WL 6982943, at *21 (N.D. Cal. Dec. 9, 2014) (Hon. Edward Chen) (certifying class of cell phone reimbursement claim and adopting the logic of *Cochran*). JM Decl. ¶ 34. To the contrary, although Plaintiff and the PAGA Settlement Group Members used their personal cell phones to perform their job duties with the knowledge of and/or acquiescence of Defendant, Plaintiff argued that Defendant did not reimburse Plaintiff and the PAGA Settlement Group Members in full any such expenses incurred. *Id*.

### F.    Plaintiff's Wage Statement Claim

Labor Code § 226(e) provides that an employee is entitled to recover $50 for the initial pay period in which a violation of Labor Code §226 occurs and $100 for each subsequent pay period, not to exceed $4,000.00, as well as an award of costs and reasonable attorneys' fees, for all such pay periods. JM Decl. ¶ 35.

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with Labor Code § 226(a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." *Id.* § 226(e). JM Decl. ¶ 36.

Plaintiff argued that due to Defendant's failure to provide Plaintiff and the PAGA Settlement Group Members with lawful off-duty meal and rest periods and/or pay meal and rest period premiums, and failure to pay minimum and overtime wages, the wage statements issued by

1  Defendant do not indicate the correct amount of gross wages earned, total hours worked, net

2  wages earned, or the applicable hourly rates in effect during the pay period and the corresponding

3  number of hours worked at each hourly rate in violation of Labor Code § 226(a)(1), (2), (5) and

4  (9).  JM Decl. ¶ 37.

5  **G.  Defendant's Failure to Pay Timely Wages**

6  Labor Code § 204 expressly requires employers who pay employees on a weekly,

7  biweekly, or semimonthly basis to pay all wages "not more than seven calendar days following the

8  close of the payroll period." JM Decl. ¶ 39.  Due to Defendant's failure to pay to Plaintiff and the

9  PAGA Settlement Group Members minimum wage and overtime compensation and meal and rest

10  period premiums as described above, Defendant failed to timely pay its employees within seven

11  calendar days following the close of payroll in accordance with Labor Code § 204 on a regular and

12  consistent basis. *See Parson v. Golden State FC, LLC,* 2016 U.S. Dist. LEXIS 58299, 2016 WL

13  1734010, at *3-5 (N.D. Cal. May 2, 2016) (finding after *Ling vs. P.F. Chang's China Bistro, Inc.*

14  that a failure to pay rest period premiums can support claims under Labor Code §§ 203 and 204).

15  *Id.*

16  **IV. THE PAGA AND ITS REQUIREMENTS**

17  PAGA provides an enforcement mechanism for California's labor laws by enlisting

18  individual plaintiffs as private attorneys general to recover civil penalties for the state, with a share

19  also going to the individual plaintiffs and other employees.  Due to the lack of financing for

20  California's agencies, and the substantial number of Labor Code violations by California

21  employers, the California Legislature found that it was in the public interest to allow aggrieved

22  employees to act as "private attorneys general" to enforce and recover civil penalties on behalf of

23  the State of California for Labor Code violations committed by employers. *Arias,* 46 Cal.4th at

24  980.  As the Legislature that adopted PAGA observed, "the only meaningful deterrent to unlawful

25  conduct is the vigorous assessment and collection of civil penalties as provided in the Labor

26  Code." Stats. 2003 ch. 906, § 1(b).

27  Moreover, the Labor Code's primary purpose is to "ensure employees are not required or

28  permitted to work under substandard unlawful conditions … and to protect employers who comply

---

**10**

with the law from those who attempt to gain a competitive advantage at the expense of their workers by failing to comply with minimum labor standards." Labor Code § 90.5(a).  Therefore, the Legislature determined that "adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts."  Thus, Plaintiff, acting as a private attorney general and proxy for the State of California, filed this action seeking civil penalties for Defendant's alleged violations of the Labor Code.

Penalties recovered under PAGA "shall be distributed as follows: 75 percent to the Labor and Workforce Development Agency for enforcement of labor laws and education of employers and employees about their rights and responsibilities under this code …; and 25 percent to the aggrieved employees." Lab. Code § 2699(i).

Before filing a PAGA action, an aggrieved employee must first provide written to the LWDA and the employer of the particular Labor Code violations the aggrieved employee alleges the employer has violated. Labor Code § 2699.3(a)(l).  This notice provides the LWDA with the opportunity to investigate and prosecute the claim.  The employee may only sue on the state's behalf if the LWDA fails to respond to the notice within 65 days, responds that it does not intend to investigate, or investigates and does not issue a citation within 185 days. Labor Code §§ 2699.3(a)(2), 2699(h).  In this case, Plaintiff provided the LWDA with a notice letter advising it of the alleged Labor Code violations, but the LWDA deferred the prosecution of these violations to Plaintiff and her attorneys. JM Decl. ¶ 14.  Accordingly, the Settlement and the $57,500.00 common fund created by it for the benefit of the State and PAGA Settlement Group Members, is solely the result of the work performed by Plaintiff and her attorneys on this case – all while the PAGA Settlement Group Members will preserve their own separate individual claims should they wish to pursue them.

Any settlement of a PAGA action brought by an aggrieved employee must be approved by

1   the court. Lab. Code § 2699(1)(2).  In 2009, the California Supreme Court considered the PAGA

2   approval process and, more specifically, whether an aggrieved employee needs to meet class

3   certification requirements. *Arias,* 46 Cal.4th at 976.  After a substantial review of the legislative

4   history of PAGA, the Court held that an aggrieved employee's representative action brought on

5   behalf of the state and other aggrieved employees against an employer for PAGA violations *does*

6   *not* need to meet the requirements for class certification nor does there need to be notice to the

7   other employees. *Id.* at 975, 980-88.  As the Court held, a plaintiff bringing suit under PAGA does

8   so as the proxy or agent of California's labor law enforcement agencies. *Id.* at 986. Thus, the Court

9   simply reviews the settlement and approves it if it is deemed to be fair and reasonable.

10        Accordingly, the Parties to this current PAGA action have reached such an agreement and

11  now seek this Court's approval of the Settlement.

12  **V.  THE SETTLEMENT AND DISTRIBUTION OF PAGA PENALTIES**

13        The following is a summary of the principal terms of the Settlement Agreement.

14        **A.      TERMS OF THE SETTLEMENT AND DISTRIBUTION OF PAGA**

15                  **PENALTIES**

16        The settlement provides that Defendant will pay a non-reversionary settlement amount of

17  Thirty-Four Thousand Five Hundred and Seventy Five Dollars ($57,500.00) (the "Total

18  Settlement Amount"), inclusive of payments to the LWDA and the PAGA Settlement Group

19  Members, attorneys' fees and litigation costs, Plaintiff's enhancement award, and Settlement

20  Administrator fees.  (The Settlement Agreement is attached as **Exhibit 1** to JM Decl.).  After

21  payment of the attorneys' fees and costs, Plaintiff's enhancement award, and settlement

22  administrator fees, the remaining funds (the "Net Settlement Amount") is approximately

23  **$21,880.50**.

24        **B.      THE DISTRIBUTION OF THE NET SETTLEMENT AMOUNT**

25        Seventy-Five Percent (75%) of the Net Settlement Amount shall be distributed to the

26  LWDA consistent with the Settlement Agreement.  The Settlement Agreement provides for a fair

27  and equitable means of allocating the remaining twenty-five percent (25%) of the Net Settlement

28  Amount to the PAGA Settlement Group Members. The allocation among the PAGA Settlement

1  Group Members shall be determined by dividing the number of pay periods he or she worked

2  during the Covered Period by the total aggregate number of pay periods worked by all PAGA

3  Settlement Group Members during the Covered Period and then multiplying this amount by the

4  PAGA Aggrieved Employee Payment.

5      **C.      PAYMENT AND THE NOTICE**

6      Within 30 business days after the Effective Date Defendant will transfer the Total

7  Settlement Amount to the Settlement Administrator via wire transfer. Settlement Agreement, p.

8  11. "Effective Date" means the first date upon which all of the following have occurred: (i) the

9  Court has granted final approval of the Settlement Agreement, (ii) the Court has entered Final

10 Judgment, and (iii) the Court's order granting final approval of the Settlement Agreement and

11 entry of Final Judgment has become final and is no longer appealable. Settlement Agreement, p.

12 11.

13     Within 10 business days after the Effective Date, Defendant will provide  to the Settlement

14 Administrator the last known mailing addresses for each of the PAGA Settlement Group

15 Members, for the purpose of the Settlement Administrator distributing the Settlement Shares by

16 U.S. mail delivery of a check. . Settlement Agreement p. 14. No later than 15 business days after

17 the Defendant transfers the Total Settlement Amount to the Settlement Administrator, the

18 Settlement Administrator will mail a check to each PAGA Settlement Group Member with his or

19 her Settlement Share (defined in the Settlement Agreement as the portion of the Net Settlement

20 Amount allocable to each PAGA Settlement Group Member as consideration for the settlement

21 and release of claims for penalties under PAGA as provided by this Agreement.)

22     **D.      SETTLEMENT ALLOCATION TO THE PAGA SETTLEMENT GROUP**

23 **MEMBERS**

24     As noted, should the Court so elect, twenty-five percent (25%) of the PAGA Penalties will

25 be allocated to the PAGA Settlement Group Members. Settlement Agreement p. 5.  Based on the

26 numbers provided by Defendant, approximately 30 current and former employees will share in this

27 fund.  The Settlement Agreement provides a very fair and equitable means of allocating this fund.

28 The allocation among the PAGA Settlement Group Members shall be divided equally among all

PAGA Settlement Group Members. *Id*. The portion of each Aggrieved Employee's share will be treated as non-wage income and reported by the Settlement Administrator on IRS Form 1099, as required by law. *Id*.

### E.    <u>THE RELEASE</u>

The California Supreme Court has explained that a judgment in "a representative action brought by an aggrieved employee under the Labor Code Private Attorneys General Act of 2004 ... is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding." *Arias,* 46 Cal. 4th at 985-986.  In accordance with this rule, the release in the Settlement Agreement narrowly covers the claims for civil penalty Representative Plaintiff brought under Labor Code § 2699 and not the claims for the alleged underlying violations. Settlement Agreement p. 5–6. The release in the Settlement Agreement includes:

"all claims for civil penalties under PAGA arising from the same facts and/or claims alleged in the Action, or claims that were pled or that could have been pled based on the facts alleged in the Complaint and the LWDA letter, including but not limited to: (A) claims for failure to pay all wages due (including minimum wages, straight time wages, and overtime wages), failure to provide compliant meal periods, failure to authorize and permit compliant rest periods, failure to provide accurate and itemized wage statements, failure to maintain required records, failure to timely pay all wages due during employment and at the time of termination, failure to reimburse employees for all business-related expenses, and any claims based on alleged violations of California Labor Code sections 201, 202, 203, 204, 210, 226, 226.3, 226.7, 227.3, 246, 256, 510, 512, 1174, 1185, 1194, 1194.2, 1198, 1198.5, 1199, 2699, and 2802,, and the California Industrial Welfare Commission Wage Orders based on the preceding claims, which arose during the PAGA period; (B) all claims that Defendant is liable for attorney's fees and costs incurred in the prosecution of this Action on behalf of the PAGA members; (C) all claims that Defendant is liable for any other remedies, penalties, or interest based on the facts alleged in the Action; (D) all claims that Plaintiff and/or the PAGA Members may have against the Released Parties relating to the payment, taxation, and allocation of attorney's fees and costs to PAGA Counsel pursuant to

the Settlement Agreement; and (E) all claims that could have been pled arising out of the same operative facts."

For these reasons, the Parties contend that the release narrowly applies only to the claims alleged, and only binds the PAGA Settlement Group Members as to the PAGA claims.

## VI. THE SETTLEMENT IS FAIR AND REASONABLE, AND WARRANTS COURT APPROVAL

### A. Standards for Approval of a PAGA Settlement

The legislative history of PAGA makes little mention of the approval requirements in § 2699, subdivision (l). PAGA was passed by the legislature as Senate Bill ("SB") 796, and it was signed by the Governor and filed with the Secretary of State on October 12, 2003. *See*, Legislative Digest re Senate Bill No. 796. It took effect on January 1, 2004.

The original version of the act did not contain the court approval requirement now codified in § 2699(l). That subdivision was added as part of the amendments to the Act that were introduced as SB 1809 in February 2004 and signed by the Governor on August 11, 2004. *See*, Legislative Digest re Senate Bill No. 1809. Those amendments took effect immediately, and the Court approval requirement of § 2699(l) was one of the provisions that the legislature made retroactive to January 1, 2004. *Id.*

Senator Joseph L. Dunn authored both the original PAGA bill (SB 796) and the amendments (SB 1809). On July 29, 2004, during the consideration of the amendments in SB 1809, Senator Dunn sent a letter addressed to the President Pro Tem of the Senate, which was published in the Senate Daily Journal, "to clarify the extent of subdivision (1)" of what is now section 2699. He was sending this letter "in response to an issue raised by the Judicial Council of California." *Id.* In the letter, Senator Dunn stated,

> The purpose of court review of the penalties in subdivision (l) is to ensure that settlements involving penalties arising out of Labor Code Section 2699 do not undercut the dual statutory purposes of punishment or deterrence, or result in unjust, arbitrary, and oppressive, or confiscatory settlements. *Id.*

The broad criteria appear to give the Court wide latitude in determining whether to approve the penalties proposes as part of a PAGA settlement. Interestingly, the criteria focus on the effect the penalties may have on the defendant-employer rather than the LWDA or the aggrieved employees

who will receive the penalties. *See, Iskanian, supra*, 59 Cal.4th at 313 (stating that while the State clearly has an interest "in receiving the proceeds of civil penalties," the penalties are "used to deter violations.") This is different than the analysis of a class action settlement, which typically focuses on the amount received by the class and compares that to the reasonable range of potential outcomes in this case. *C.f., e.g., Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 130. Moreover, "there is not requirement that the Court certify a PAGA claim for representative treatment" as in a class action. *Villalobos v. Calandri Sonrise Farms LP* (C.D. Cal. July 2015) 2015 WL 12732709, at *5.

**B. The Civil Penalties are Appropriate Under the Circumstances and Given Defendant's Convincing Arguments and Evidence**

Here, the penalties are appropriate when considered in light of the principles discussed in Senator Dunn's letter. Plaintiff contends that a non-reversionary Total Settlement Amount of $57,500.00 represents an excellent recovery that is large enough to punish or deter Defendant. The proposed Settlement provides a fair and reasonable monetary recovery for the LWDA, should the Court so elect, the PAGA Settlement Group Members in the face of hotly-disputed claims.

Although PAGA and its legislative history do not seem to require a comparison with the "maximum value" of the claims to the actual settlement amount, the penalties are reasonable when considered in this context as well. The number of PAGA Settlement Group Members in the PAGA covered period is only 30 and the number of PAGA-eligible pay periods is approximately 525. JM Decl. ¶ 42.

Further, while Plaintiff believes the claims are meritorious and that they would have recovered unreduced penalties, Defendant asserted numerous defenses to the claims. JM Decl. ¶ 43. For example, a significant factor in evaluating the value of a PAGA-only case is that all PAGA awards are discretionary and subject to potentially significant reduction by the Court. Defendant maintains that given their good faith and *de minimis* defenses, this Court would exercise its discretion to substantially reduce any PAGA penalties if it were to find Defendant liable for any of Plaintiff's claims. *Id. See also*, Labor Code §§ 203, 2699(e)(2); *Thurman v. Bayshore Transit Mgmt., Inc.* (2012) 203 Cal.App.4th 1112, 1135 (affirming reduction of PAGA penalties for wage

statement violations from $2,800,000 to $500,000, because "the aggrieved employees suffered no injury" as a result of the violations, the defendants "were not aware" their wage statements violated the law, and the defendants "took prompt steps to correct all violations once notified."); *Fleming v. Covidien, Inc.* (C.D. Cal. Aug. 12, 2011, No. (OPX)) 2011 WL 7563047, at *4 (reducing PAGA penalties from $2.8 million to $500,000). *Id.*

Additionally, Defendant argued Plaintiff could only seek PAGA penalties at the $100 "initial" violation rate, as opposed to the $200 "subsequent" violation rate, as before Plaintiff initiated this action, Defendant had never been put on notice by a court or the Labor Commissioner that its practices violated the Labor Code. *See, Amaral v. Cintas Corp. No. 2,* 163 Cal.App.4th 1157, 1209 (2008) (finding "initial" violation rate applies until employer has been notified that it is violating a Labor Code provision). As a result, Plaintiff gave Defendant the benefit of the "initial" $100.00 per pay period violation as opposed to the $200.00 subsequent per violation rate in calculating penalties. JM Decl. ¶ 44. In light of the foregoing, Plaintiff's Counsel took into consideration the defenses raised and applied the appropriate discounts. *Id.*

Based upon the data provided by Defendant, the **maximum potential exposure** for the PAGA claims for PAGA members is $133,400.  JM Decl. ¶ 44. During the Covered Period, there were approximately 525 pay periods. *Id.*  Adding PAGA penalties for waiting time (9 former employees = $900), overtime (28 employees = $40,400), meal breaks (23 employees = $8,400), wage statements (30 employees = $52,500), sick pay (19 employees = $8,000), and meal premiums (24 employees = $23,200), totals $133,400 in exposure based on the sampling provided by Defendant according to Plaintiff's expert's analysis.

This settlement is a great result given that Courts can exercise their discretion to reduce the amount of PAGA penalties. *See e.g., Fleming v. Covidien Inc.*, 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011). Further, in *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 517 (Ct. App. 2018), the California Court of Appeals deemed it reasonable to award just five dollars per PAGA violation. **Here, with 525 pay periods at issue, under *Carrington* an appropriate settlement amount could be as low as $2,625.00.** JM Decl. ¶ 45. Instead, despite the risks of the case identified through mediation and exchange of documents and information with opposing

1   counsel, the Total Settlement Amount of $57,500.00 results in **$109** for each pay period if

2   assuming a 100% violation rate for all pay periods in the Covered Period. *Id.*  Accordingly, the

3   proposed settlement reflects a better result than some actual PAGA trials that were litigated to

4   completion, though other cases also provided for a greater award than *Carrington*. *Id.* Thus, the

5   PAGA settlement amount is reasonable in light of significant risks and uncertainties associated

6   with the PAGA claims in this case. *Id.*

7       Defendant vigorously disputed the merits of Plaintiff's claims. JM Decl. ¶ 46. Defendant

8   asserted that it paid all minimum and overtime wages for all hours worked, provided all legally

9   mandated meal and rest periods, reimbursed all business expenses, and produced only complete

10   and accurate wage statements. *Id.*

11       The scope of the release of the PAGA Settlement is necessarily strictly confined to those

12   PAGA civil penalties that were or could have been alleged in the Action.  JM Decl. ¶ 47. The

13   PAGA Released Claims do not release any Aggrieved Employee's non-PAGA claims for alleged

14   violations of the Labor Code. *Id.* Individual PAGA Settlement Group Members who believe they

15   have been denied, for example, minimum wage or overtime, can maintain those rights to pursue

16   those claims in another proceeding.

17       The proposed Settlement, even with deductions, provides a substantial sum of **$5,470.13** to

18   the aggrieved employees and **$16,410.37** to the LWDA. JM Decl. ¶ 48. The Settlement secured by

19   Plaintiff here is greater than other PAGA penalty awards approved by California state courts,

20   which often range between $7,500.00 and $15,000.00 for PAGA claims impacting hundreds or

21   thousands of individuals, resulting in much lower PAGA penalty payments on a per capita basis.

22   *See, e.g., Penaloza v. PPG Industries Inc*., Case No. BC471369, 2013 WL 2917624 at *2 (Super.

23   Ct. L.A. County, May 20, 2013) (approving PAGA penalties of $5,000.00 to class of 667

24   members); *Cabrera v. Advantage Sale & Marketing, LLC*, Case No. BC485259, 2013 WL

25   1182822 (Super. Ct. L.A. County, March 12, 2013) (approving PAGA penalties of $10,000.00 for

26   class of approximately 3,000 members). *Id.*

27       Public policy strongly favors the settlement of litigation. *Consumer Advocacy Group v.*

28   *Kintetsu Enterprises of America* (2006) 141 Cal.App.4th 46, 63. Because the proposed Settlement

is neither unjust nor ignores the public interest, it should be approved.  JM Decl. ¶ 49.

Accordingly, the gross PAGA penalty payment is extremely reasonable in light of the risks and uncertainties associated with the PAGA claims in this case.  JM Decl. ¶ 54. The Settlement commits Defendant to pay over **$21,880.50** in PAGA penalties (after fees/costs), which is large enough to punish Defendant for alleged violations and to deter such alleged conduct in the future. *Id.*  At the same time, in light of the alleged violations and defenses thereto, it is not so large as to be unjust, oppressive or confiscatory. *Id.*  Based upon the foregoing, the proposed settlement is fair, reasonable, and in the best interest of the state of California, Plaintiff, and the PAGA Settlement Group Members. *Id.*

## VII.   THE REQUESTED ATTORNEYS' FEES AND LITIGATION COSTS ARE FAIR AND   REASONABLE

For their efforts and the risk that they undertook in obtaining a common fund settlement that benefits the LWDA and PAGA Settlement Group Members, the Parties allocated one-third of the Total Settlement Amount to Plaintiff's Counsel for reasonable attorneys' fees, plus actual litigation costs.  These fees are warranted under the law and within the range of fees commonly awarded in similar cases.

### A.     PLAINTIFF'S COUNSEL ARE ENTITLED TO RECOVER ATTORNEYS' FEES UNDER THE COMMON FUND DOCTRINE IN THIS QUI TAM ACTION

When awarding attorneys' fees, courts have discretion to choose among two different methods for calculating a reasonable attorney's fees award: 1) the common fund approach; or 2) the lodestar approach *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal.5th 480, 504, (2016) ("The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts.") In *Laffitte*, the California Supreme Court held that "[t]he recognized advantages of the percentage method – including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel ***to seek an early settlement and***

1    ***avoid unnecessarily prolonging litigation*** – convince us the percentage method is a valuable tool

2    that should not be denied by our trial courts." *Id.* (emphasis added). Similarly, the Ninth Circuit

3    has found that counsel should not "receive a lesser fee for settling a case quickly." *Vizcaino v.*

4    *Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).

5    Further, PAGA provides that a Plaintiff is entitled to recover reasonable attorneys' fees,

6    expenses, and costs under section 2699(g)(1) of the California Labor Code, which states that,

7    "Any employee who prevails in any action shall be entitled to an award of reasonable attorney's

8    fees and costs, including any filing fee paid pursuant to subparagraph (B) of paragraph (1) of

9    subdivision (a) or subparagraph (B) of paragraph (1) of subdivision (c) of Section 2699.3. As

10    discussed below, in a qui tam action, reasonable attorneys' fees and costs are typically awarded

11    under the common fund doctrine where, as here, the litigation creates a common fund of money in

12    a specific amount for the benefit of others.

13    "A qui tam action is one brought under a statute that allows a private person to sue as a

14    private attorney general to recover damages or penalties, all or part of which will be paid to the

15    government." *People ex rel. Stratham v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 491-

16    492. "A qui tam action 'is a type of private attorney general lawsuit' [citation], in which 'the qui

17    tam plaintiff stands in the shoes of the state or political subdivision [citation].'" *Id.* at p. 501. As

18    the name of the PAGA statute makes clear (e.g. "Labor Code Private Attorney General Act"), a

19    PAGA action is a qui tam action because the statute allows the employee plaintiff, acting as the

20    proxy of the state's labor law enforcement agency, to sue his or her employer for Labor Code

21    violations and recover civil penalties that otherwise would have been assessed and collected by the

22    Labor and Workforce Development Agency (LWDA). *Iskanian v. CLS Transp. Los Angeles, LLC*

23    (2014) 59 Cal.4th 348, 380. "A PAGA representative action is therefore a type of *qui tam* action."

24    *Id.* at p. 382.  Indeed, the majority of the civil penalties recovered in a PAGA action are paid to the

25    state, with a smaller portion paid to the aggrieved employees (e.g. 75% paid to the state; 25% paid

26    to the aggrieved employees). See Lab. C. 2699(i).

27    As here, where a common fund is created in a qui tam action by the successful litigation of

28    a plaintiff and his attorneys, the plaintiff's attorneys are entitled to recover their fees from the

**NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT**

common fund. *Bank of America v. Cory* (1985) 164 Cal.App.3d 66, 89-91. In *Bank of America*, California taxpayers compelled the State Controller to enforce the Unclaimed Property Law against banks who were retaining accounts that should have been turned over to the State. Because of the success of the taxpayers' lawsuit, a common fund was created in favor of some depositors and the State of California. *Id.* When the taxpayers' attorneys sought recovery of their attorney's fees from the judgment under the common fund doctrine, the Controller opposed the request. The Court of Appeal affirmed the trial court's fee award to the taxpayers' counsel under the common fund doctrine stating:

> "Those benefiting from the recovery of the fund, in this case some depositors and eventually the People of the State of California, must bear their share of the cost of litigation. Fees for taxpayers' attorneys will be deducted from the judgment, and each claimant's share reduced proportionately. To the extent the judgment relies upon section 1021.5 for recovery of attorney fees, it must be modified to confine the award of fees to the common fund theory." *Id.* at p. 91.

Likewise, in this case, through the successful efforts of Plaintiff and his attorneys, a common fund was created in the amount of $57,500 for the benefit of the PAGA Settlement Group Members and the State of California. Thus, these beneficiaries must bear their share of the costs and attorney's fees, which fees and costs must be deducted from the settlement amount under the common fund theory. *Id.*

The California Supreme Court recently upheld the use of the common fund theory of recovery for attorney's fees in *Laffitte v. Robert Half Int'l Inc.* (2016) 1 Cal.5th 480, 506. In *Laffitte*, the settlement created a common fund of $19 million dollars. The Court approved the award of attorney's fees in the amount of one-third of the gross $19 million-dollar settlement (e.g. awarded $6.33 million in attorney's fees) under the common fund theory of recovery. *Id.* This ruling is consistent with the Court's prior rulings recognizing that "when a number of persons are entitled in common to a specific fund, and an action brought by … plaintiffs for the benefit of all results in the creation or preservation of that fund, such … plaintiffs may be awarded attorneys' fees out of the fund." *Serrano III v. Priest* (1977) 20 Cal.3d 25, 34; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund . . . is entitled to reasonable

1    attorneys' fees from the fund as a whole"); *Mills v. Electric Auto-Lite Co.* (1970) 396 U.S. 375,

2    393-394 (discussing the acceptance of awarding attorneys' fees and expenses from a settlement

3    where "litigation has conferred a substantial benefit on the members of an ascertainable class");

4    see also *Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 26 ("[f]ee spreading

5    occurs when a settlement or adjudication results in the establishment of a separate or so-called

6    common fund for the benefit of the class.")

7         Accordingly, the common fund doctrine allows a court to award attorneys' fees based upon

8    a percentage of the total fund that is created for the satisfaction of beneficiaries' claims when the

9    fund consists of a "certain or easily calculable sum of money." *Dunk v. Ford Motor, Co.* (1996) 48

10   Cal.App.4th 1794, 1809; *Jutkowitz v. Bourns, Inc.* (1981) 118 Cal.App.3d 102, 110 [application of

11   the percentage of the fund recovery depended on "[t]he critical point" that "a fund was created

12   from which attorneys' fees could be paid"]; A. Conte & H. Newberg, *Newberg on Class Actions*, §

13   14:6 (4th ed. 2002).

14        California law has long upheld, and continues to uphold, the percentage of the recovery

15   method for awarding attorneys' fees where a fund is established. See e.g., *Serrano III v. Priest*

16   (1977) 20 Cal.3d 25, 34; *Bell v. Farmers Insurance Exchange* (2004) 115 Cal.App.4th 715, 726;

17   *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 563 ("fees based on a percentage of the benefits

18   are in fact appropriate in large class actions…"); *Sanders v. City of Los Angeles* (1970) 3 Cal.3d

19   252, 261, 263 (affirming award of attorneys' fees based on percentage of recovery); *Chavez v.*

20   *Netflix, Inc.*, *supra*, 162 Cal.App.4th at pp. 65-66; see also *Consumer Cause, Inc. v. Mrs. Gooch's*

21   *Natural Food Markets, Inc.* (2005) 127 Cal.App.4th 387, 397 (the common fund doctrine is

22   "frequently applied in class actions when the efforts of the attorney for the named class

23   representatives produce monetary benefits for the entire class"); *Wershba v. Apple Computer, Inc.*

24   (2001) 91 Cal.App.4th 224, 254 ("courts recognize two methods for calculating attorney fees in

25   class actions: the lodestar/multiplier method and the percentage of recovery.")

26        In light of the foregoing, awarding attorneys' fees based on a one-third percentage of the

27   gross settlement amount is favored by California Courts when a fund established for the common

28   benefit of others is involved, such as here.  Accordingly, awarding fees on this basis in the amount

1  of one-third of the $57,500.00 Total Settlement Amount is reasonable and appropriate.

2  **B.    A FEE OF ONE-THIRD OF THE GROSS SETTLEMENT AMOUNT IS**
3  **FAIR AND REASONABLE BASED UPON THE FACTORS DEVELOPED**
   **BY THE COURTS AND SERVES THE PUBLIC POLICY OF**
4  **ATTRACTING COMPETENT COUNSEL TO LITIGATE THESE CASES**

5  An award of fees from the Total Settlement Amount under the common fund doctrine
6  prevents unjust enrichment of those who benefit from the common fund created through the
7  successful efforts of plaintiff's counsel and furthers the important goal of attracting competent
8  counsel to handle representative actions enforcing minimum labor standards. *Laffitte v. Robert*
9  *Half Int'l. Inc.* (2016) 1 Cal.5th 480, 503. In affirming the use of the common fund doctrine in
10 California, the California Supreme Court summarized the benefits of the percentage method of
11 recovery stating: "The recognized advantages of the percentage method—including relative ease
12 of calculation, alignment of incentives between counsel and the class, a better approximation of
13 market conditions in a contingency case, and the encouragement it provides counsel to seek an
14 early settlement and avoid unnecessarily prolonging the litigation [citations]—convince us the
15 percentage method is a valuable tool that should not be denied our trial courts." *Id.*

16 Among the factors considered in determining whether the requested fee percentage is
17 reasonable are: (1) the results achieved; (2) the risk of further litigation; (3) the skill required of
18 plaintiff's counsel and the quality of work performed by plaintiff's counsel; (4) the contingent
19 nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar
20 cases. *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1048-50. All these factors
21 support an award here of one-third of the common fund.

22 First, Plaintiff's Counsels' efforts resulted in a common fund settlement amount of
23 $57,500. This is a great PAGA settlement considering the contested issues.

24 Second, Plaintiff faced significant risks going forward with the litigation. As discussed
25 above, Defendant raised various defenses and, as such, Plaintiff faced risky issues going forward
26 with this litigation, as well as the fact that it would have taken significant time to realize any
27 recovery in this action along with the possibility of post-trial appeals.

28 Third, Plaintiff's Counsel are experienced representative and class action litigators, and

1  have previously achieved significant PAGA and class action awards.  This experience and

2  expertise, combined with the high quality of work performed in this case by Plaintiff's Counsel,

3  resulted in the settlement achieved.

4          Fourth, as discussed above, the request for attorney's fees in the amount of one-third of the

5  common fund falls well within the norms accepted by state and federal courts in California in

6  comparable wage and hour actions. Moreover, the award of a one-third fee recovery under the

7  common fund doctrine was recently approved by the California Supreme Court in *Laffitte*, *supra*, 1

8  Cal.5th 480, 503.

9          For all of the above reasons, a common fund fee award here in the amount of one-third of

10  the $57,500.00 common fund created by Plaintiff and her attorneys is fair and reasonable.

11  **C.  AN AWARD OF 1/3 OF ATTORNEYS' FEES CONSISTENT WITH**

12  **PLAINTIFF'S COUNSEL'S EXPERIENCE, THE RESULTS ACHIEVED, AND OTHER**

13  **CASES**

14          Plaintiff's Counsel's request for attorneys' fees in the amount of 1/3 of the common fund

15  falls within the range of attorneys' fees regularly awarded by Courts in similar matters. *See e.g.,*

16  *McCrary v. Elations Co., LLC*, 2016 U.S. Dist. LEXIS 24050, at *2 (C.D. Cal. Feb. 25, 2016)

17  (finding that most fee awards based on either a percentage calculation or lodestar percentage are

18  33%; *Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270, 2007 WL 3492841,

19  at *4 (E.D. Cal. Nov. 14, 2007) (awarding 33% of the settlement fund in a wage-and-hour case

20  involving allegations of unpaid wages after explaining that "fee awards in class actions average

21  around one-third of the recovery."); *Stuart v. RadioShack Corp.*, 2010 WL 3155645 (N.D. Cal.

22  Aug. 9, 2010) (noting that a fee award of 1/3 of the settlement was "well within the range of

23  percentages which courts have upheld as reasonable in other class action lawsuits.").[2]

24          Plaintiff's Counsel in this action are experienced wage-and-hour litigators who have

25  prosecuted numerous Class and PAGA actions including several at the appellate level helping to

26  establish law favorable to employees. Plaintiff's Counsel have provided their qualifications and

27  ---

[2] *See also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming an award of attorneys' fees
equal to approximately 33 percent of the common fund); *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 491-
28  92 (E.D. Cal. 2010) (33.33% award).

1  experience in their concurrently filed declaration. *See,* JM Decl. ¶¶ 3-7.  The excellent results

2  achieved in light of the significant risks associated with contingency litigation support Plaintiff's

3  Counsel's request for an award of 1/3 of the common fund.

4         Plaintiff's Counsel believes that the Court should also take into advisement the

5  considerable risks undertaken by the prosecution of this action, the excellent result achieved by

6  Plaintiff's Counsel as well as the non-monetary relief from which the PAGA Settlement Group

7  Members have already benefitted. It is not a foregone conclusion that every case taken on a

8  contingency fee basis will result in a recovery or that the attorneys' fees recovered will actually

9  compensate my firm for the amount of time expended in an action. Moreover, even when

10  successful, a class and representative action contingency law firm may only receive a small

11  percentage of the amount of attorneys' fees incurred during the prosecution of a case. Where

12  plaintiffs' counsel does succeed, therefore, it is appropriate to compensate the firm for the risks the

13  firm regularly undertakes. Plaintiff's Counsel's firms are currently prosecuting actions where the

14  defendant has declared bankruptcy even after the successful negotiation of a settlement and have

15  done numerous cases where they have received a <u>negative multiplier</u> meaning that Plaintiff's

16  Counsel prosecutes cases where they do not receive full compensation for all of their hours

17  worked.  This risk is particularly acute when dealing with a defendant of this size.

18         Lastly, Plaintiff's Counsel believes that the Court should take into consideration the

19  excellent result achieved by Plaintiff's Counsel. Plaintiff's Counsel obtained a significant

20  monetary recovery in light of the discretionary nature of PAGA penalties. In a PAGA action, the

21  Court has the same authority "to assess a civil penalty" that the Labor Commissioner would have,

22  as well as complete discretion to "award a lesser amount than the maximum civil penalty amount

23  specified [by PAGA] if, based on the facts and circumstances of the particular case, to do

24  otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Lab.

25  Code § 2699(e)(2). Courts often exercise at least some discretion with respect to PAGA penalties

26  and it's possible that the Court in this action would have exercised its discretion to reduce the

27  PAGA penalties. Courts have exercised their discretion to award only 5% to 18% of the potential

28  PAGA penalties. *See e.g., Kileigh Carrington v. Starbucks Corporation, et al.*, San Diego Superior

**NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT**

1  Court Case No. 37-2014-00018637-CU-OE-CTL (Apr. 3, 2017) (holding that the plaintiff was

2  only entitled to collect the reduced penalty amount of $5.00 for each pay period in which a meal

3  period violation occurred or 5% of the PAGA penalties at issue); *Fleming v. Covidien, Inc.* (C.D.

4  Cal. Aug. 12, 2011) 2011 WL 7563047, at *4 (reducing PAGA penalties by 82% to $5000 per

5  employee).

6      Further, courts can exercise their discretion to reduce the amount of PAGA penalties.

7  *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 517 (Ct. App. 2018) (deeming it reasonable

8  to award PAGA penalties at only $5 per pay period). Here, with 525 pay periods at issue, under

9  *Carrington* an appropriate settlement amount could be as low as $2,155, far lower than the amount

10  recovered via the proposed settlement. Accordingly, the proposed settlement reflects a better result

11  than some actual PAGA trials that were litigated to completion, though other cases also provided

12  for greater award than *Carrington*.

13      **E.** **THE REQUESTED LITIGATION COSTS ARE FAIR AND REASONABLE**

14      Plaintiff's Counsel requests reimbursement of their actual out-of-pocket expenses incurred

15  to prosecute this action.   These expenses were incidental and necessary to the effective

16  representation of the employees. *See Harris v. Marhoefer* (9th Cir. 1994) 24 F.3d 16, 19.

17  Plaintiff's Counsel are permitted to recover their litigation costs and expenses under the common

18  fund doctrine. See *Serrano III*, 20 Cal.3d at 35 (common fund doctrine permits recovery of fees

19  and costs from the fund); *Rider v. County of San Diego* (1992) 11 Cal.App.4th 1410, 1424 n.6

20  (costs are recoverable from the common fund "[o]f necessity, and for precisely the same reasons

21  discussed above with respect to the recovery of attorneys' fees by . . . [Plaintiffs'] attorneys").

22  Furthermore, Plaintiff's Counsel are entitled to recover "those out-of-pocket expenses that would

23  normally be charged to a fee-paying client." *Harris*, *supra*, 24 F.3d at 19.)

24      The actual litigation costs in this case by Plaintiff's Counsel to date amounts to $10,519.50

25  which includes anticipated costs in association with the filing and serving of the present motion,

26  and in connection with shepherding this settlement through funding and disbursement. JM Decl., ¶

27  60.

28  **VIII.**   **SUBMISSION TO THE LWDA**

The Settlement and this Motion are concurrently being submitted to the LWDA in accordance with Labor Code § 2699(l)(2).  The proof of electronic submission is attached as **Exhibit 3** to JM Decl., ¶ 61.

## IX. THE SETTLEMENT ADMINISTRATOR

The Parties have agreed to use ILYM Group, Inc. as the Settlement Administrator. The Settlement Administrator will be responsible for processing the settlement payments for the PAGA Settlement Group Members.  Settlement Agreement p. 4. A true and correct copy of ILYM Group, Inc's bid to administer settlement checks is attached to the JM Decl. as **Exhibit 4**.  ILYM Group, Inc. has administered hundreds, if not thousands, of class and PAGA settlements.

## X. CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court approve the PAGA Settlement.

Dated: December 19, 2023          **MELMED LAW GROUP P.C.**


By:     /s/
        Megan E. Ross
        Attorneys for Plaintiff and the PAGA
        Settlement Group Members

NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT