# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR AMBROSE, | Case No. 1:23-cv-00114-SAB |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR APPROVAL OF PAGA SETTLEMENT WITH REDUCTION IN ATTORNEYS' FEE AWARD AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE |
| v. | |
| US MED-EQUIP, LLC, | |
| Defendant. | |
| | (ECF No. 18) |

## I.

## INTRODUCTION

Plaintiff Taylor Ambrose ("Ambrose"), maintains this representative action against Defendant US Med-Equip, LLC ("Med-Equip") for penalties pursuant to the Private Attorneys General Act of 2004, California Labor Code §§ 2698 *et seq.* ("PAGA"), alleging violations of Labor Code §§ 201, 202, 203, 204, 210, 226, 226.3, 226.7, 227.3, 256, 510, 512, 1174, 1185, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2802, 2804, California Code of Regulations Title 8 Sections 11050 and 11150, and California Industrial Commission Wage Order 4. Currently before the Court is Plaintiff's motion to approve the settlement of this PAGA action. (Pl.'s Mot. Appr. PAGA ("Mot"), ECF No. 18.) The settlement also encompasses the resolution and release of the individual underlying claims between the Plaintiff and Defendant relating to this action.

1    The Court held a hearing on the motion on January 24, 2024.  For the reasons explained
2    herein, the Court orders the motion be granted with a reduction in the attorneys' fees request, and
3    associated increase in the penalties awarded to the State of California and the aggrieved
4    employees.

**II.**

**BACKGROUND**

7    On January 26, 2023, Plaintiff submitted a letter to the California Labor and Workforce
8    Development Agency ("LWDA") to notify the LWDA of Plaintiff's intent to seek civil penalties
9    under PAGA for violations of Labor Code §§ 201, 202, 203, 204, 210, 226, 226.3, 226.7, 510,
10   512, 1185, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2802, 2804, California Code of Regulations
11   Title 8 Sections 11050 and 11150, and California Industrial Commission Wage Order 4.  (See
12   Mot. 7; Decl. Jonathan Melmed Supp. Mot. ("Melmed Decl.") ¶ 10, ECF No. 18-1, Ex. 2, ECF
13   No. 18-3 at 1.)  The LWDA did not respond to the notice.  (Id.)

14   Also on January 26, 2023, Plaintiff filed a class action complaint alleging causes of
15   action for (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to
16   provide rest periods and pay missed rest period premiums; (4) failure to provide meal periods
17   and pay missed meal period premiums; (5) failure to maintain accurate employment records; (6)
18   failure to pay wages timely during employment; (7) failure to pay all wages earned and unpaid at
19   separation; (8) failure to indemnify all necessary business expenses; (9) failure to furnish
20   accurate itemized wage statements; and (10) violations of California's unfair competition law.
21   (ECF No. 1; Melmed Decl. ¶ 11.)  The Parties stipulated to allow Plaintiff to file a first amended
22   complaint adding a single cause of action for PAGA Penalties Pursuant to Labor Code § 2698 et
23   seq. for violations of Labor Code §§ 201, 202, 203, 204, 210, 226, 226.3, 226.7, 510, 512, 1185,
24   1194, 1194.2, 1197, 1197.1, 1198, 1199, 2802, 2804, California Code of Regulations Title 8
25   Sections 11050 and 11150, and California Industrial Commission Wage Order 4 (the "Action").
26   (Mot. 7; Melmed Decl. ¶ 12.)  On April 13, 2023, the Court approved the stipulation and deemed
27   the first amended complaint filed.  (ECF Nos. 6, 7.)  On May 15, 2023, Defendant filed an
28   answer.  (ECF No. 8.)

On June 13, 2023, the Court issued a phased class scheduling order.  (ECF No. 11.)  On October 27, 2023, the parties filed a notice of settlement.  (ECF No. 14.)  On October 30, 2023, the Court vacated all dates and deadlines, and ordered the parties to file a motion for approval of class action settlement on or before December 29, 2023.  (ECF No. 15.)

On November 6, 2023, the parties filed a notice of dismissal requesting Plaintiff's class claims only, be dismissed without prejudice.  (ECF No. 16.)  The stipulation proffered that the parties did not intend to dismiss Plaintiff's individual or PAGA representative claims by way of the joint request.  (Id.)  The stipulation further proffered that: no consideration was exchanged for the dismissal of Plaintiff's class claims; no notices were mailed to the similarly situated employees nor has there been any form of advertising disseminated; no class has been certified in this matter; no motions to certify a class have been filed; and no person not named in this lawsuit is bound by the dismissal.  (Id.)  On November 7, 2023, the Court issued an order construing and entering the stipulation of dismissal as a stipulation to amend the complaint, and the Court deemed the first amended complaint amended so that any class action claims asserted therein are no longer alleged against Defendant, and ordered the parties to file any motion for approval of the PAGA settlement, on or before December 29, 2023.  (ECF No. 17.)  Therefore, the operative complaint in this action, as amended, does not contain any class claims.  (See ECF Nos. 6, 7, 16, 17.)

On December 19, 2023, Plaintiff filed the motion for approval of the PAGA settlement. (ECF No. 18.)  Attached to the motion is a notice dated December 11, 2023, that indicates the proposed settlement materials were sent to the LWDA on such date by electronic submission. (Melmed Decl., Ex. 3, ECF No. 18-4 at 1.)[1]

No opposition or objection has been filed.  On January 24, 2024, the Court held a hearing on the motion to approve the PAGA settlement.  Megan E. Ross appeared on behalf of Plaintiff. Annureet K. Grewal appeared on behalf of Defendant.

On January 24, 2024, the parties submitted forms giving consent to Magistrate Judge

---

[1] While the motion proffers the motion was also concurrently submitted, the motion was signed and filed with this Court on December 19, 2023.

jurisdiction over this action for all purposes.  (ECF Nos. 19, 20.)  Accordingly, on the same date, this action was authorized to proceed before the assigned Magistrate Judge for all further proceedings including trial and entry of judgment.  (ECF No. 22.)

### III.

### LEGAL STANDARD

In 2003, the California Legislature enacted the Private Attorney General Act, California Labor Code §§ 2698 *et seq.*, after declaring that "adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts."  Arias v. Superior Ct., 46 Cal. 4th 969, 980 (2009).

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of themselves and other current or former employees.  Cal. Lab. Code § 2699(a).  An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."  Cal. Lab. Code § 2699(c).

An employee plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies."  Arias, 46 Cal. 4th at 986.  In such action, "the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies— namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency."  Id. (citing Cal. Lab. Code § 2699(a), (f)).

Therefore, a judgment in such PAGA "action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government.'  Arias, 46 Cal. 4th at 986; see also Iskanian v. CLS Transportation Los Angeles, LLC, 59 Cal. 4th 348, 381 (2014) ("When a government agency is authorized to bring an action on behalf of an individual or in the public interest, and a private person lacks an independent

1    legal right to bring the action, a person who is not a party but who is represented by the agency is

2    bound by the judgment as though the person were a party."), abrogated on other grounds by

3    Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906, 213 L. Ed. 2d 179 (2022); Perez v. All

4    Ag, Inc., No. 118CV00927DADEPG, 2021 WL 3129602, at *3 (E.D. Cal. July 23, 2021) (same).

5        "Of the civil penalties recovered, 75 percent goes to the Labor and Workforce

6    Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.' " Arias,

7    46 Cal. 4th at 980–81 (quoting Cal. Lab. Code § 2699(i)).  "The civil penalties recovered on

8    behalf of the state under the PAGA are distinct from the statutory damages to which employees

9    may be entitled in their individual capacities."  Iskanian, 59 Cal. 4th at 381.  Therefore, "a

10   request for statutory penalties provided by the Labor Code for employer wage-and-hour

11   violations, which were recoverable directly by employees well before the [PAGA] became part

12   of the Labor Code," is distinct from "a demand for 'civil penalties,' previously enforceable only

13   by the state's labor law enforcement agencies."  Id. (quoting Caliber Bodyworks, Inc. v. Superior

14   Ct., 134 Cal. App. 4th 365, 377 (2005)).

15       To bring an action under PAGA, an aggrieved employee must first provide written notice

16   to the LWDA as well as to the employer.  Id. (citing Cal. Lab. Code § 2699.3(a)(1)(A)).  Further,

17   the trial court "shall review and approve any settlement" of a PAGA action, and "[t]he proposed

18   settlement shall be submitted to the agency at the same time that it is submitted to the court."

19   Cal. Lab. Code § 2699(*l*)(2).

20       "There is no binding authority identifying the proper standard of review of PAGA

21   settlements to be employed by the court."  Perez, 2021 WL 3129602, at *3.  "In the class action

22   context, where PAGA claims are also often brought, a district court must independently

23   determine that a proposed settlement agreement is 'fundamentally fair, adequate and reasonable'

24   before granting approval."  Beltran v. Olam Spices & Vegetables, Inc., No.

25   118CV01676JLTSAB, 2023 WL 1467118, at *20 (E.D. Cal. Feb. 2, 2023) (quoting Officers for

26   Justice v. Civil Serv. Comm'n of City & County of San Francisco, 688 F.2d 615, 625 (9th Cir.

27   1982)); see also Perez, 2021 WL 3129602, at *3 (same).  "However, this is not a class action,

28   and PAGA claims are intended to serve a decidedly different purpose—namely to protect the

1   public rather than for the benefit of private parties.  <u>Perez</u>, 2021 WL 3129602, at *3 (citing

2   <u>Arias</u>, 46 Cal. 4th at 986).   In <u>O'Connor</u>, where both class action and PAGA claims were

3   covered by a proposed settlement, the LWDA "stressed that":

> It is thus important that when a PAGA claim is settled, the relief
> provided for under the PAGA be genuine and meaningful,
> consistent with the underlying purpose of the statute to benefit the
> public and, in the context of a class action, the court evaluate
> whether the settlement meets the standards of being
> "fundamentally fair, reasonable, and adequate" with reference to
> the public policies underlying the PAGA.

8   <u>O'Connor v. Uber Techs., Inc.</u>, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016); <u>see also</u> <u>Perez</u>,

9   2021 WL 3129602, at *4 n.5 ("The LWDA is not aware [of] any existing case law establishing a

10  specific benchmark for PAGA settlements, either on their own terms or in relation to the

11  recovery on other claims in the action." (quoting <u>O'Connor v. Uber Techs., Inc.</u>, No. 3:13-cv-

12  03826-EMC (N.D. Cal. Jul. 29, 2016), ECF No. 736 at 2–3)).

13         The Court proceeds to evaluate the PAGA settlement under the standards expressed in

14  <u>O'Connor</u> and that this Court has previously applied to settlements containing both class and

15  PAGA claims.  <u>See</u> <u>Beltran</u>, 2023 WL 1467118, at *20-21; <u>see also</u> <u>Perez</u>, 2021 WL 3129602, at

16  *4 ("Recognizing the distinct issues presented by class actions, this court is nevertheless

17  persuaded by the LWDA's reasoning in <u>O'Connor</u> and therefore . . . the court will approve a

18  settlement of PAGA claims upon a showing that the settlement terms (1) meet the statutory

19  requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate in

20  view of PAGA's public policy goals."); <u>Murray v. Scelzi Enterprises, Inc.</u>, No.

21  118CV01492LJOSKO, 2019 WL 6045146, at *12 (E.D. Cal. Nov. 15, 2019) (same).  "The

22  court's determination as to fairness, reasonableness, and adequacy may involve a balancing of

23  several factors including but not limited to the following: the strength of plaintiffs' claims; the

24  risk, expense, complexity, and likely duration of further litigation; the amount offered in

25  settlement; the extent of discovery completed, and the stage of the proceedings; and the

26  experience and views of counsel."  <u>Perez</u>, 2021 WL 3129602, at *4 (citing <u>Officers for Justice</u>,

27  688 F.2d at 625).

28         Accordingly, "the Court evaluates the PAGA settlement in light of the PAGA

1    requirement that the award not be 'unjust, arbitrary and oppressive, or confiscatory[,]' Cal. Labor

2    Code § 2699(e)(2)[,] . . . also considers the five relevant <u>Hanlon</u> factors and discusses whether

3    'the settlement provisions are at least as effective as the protections or remedies provided by

4    state and federal law or regulation[,]' Cal. Labor Code § 2699.3(b)(4)." <u>Ramirez v. Benito</u>

5    <u>Valley Farms, LLC</u>, No. 16-CV-04708-LHK, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25,

6    2017) ("Many of these factors are not unique to class action lawsuits and bear on whether a

7    settlement is fair and has been reached through an adequate adversarial process . . . the Court

8    finds that these factors are useful in evaluating a PAGA settlement[,] [h]owever, three of the

9    <u>Hanlon</u> factors—risk of maintaining class action status, presence of a governmental participant,

10   and reaction of class members—are not relevant to a PAGA settlement that is not a class action

11   and in which the LWDA is not involved." (citing <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026

12   (9th Cir. 1998))).

### IV.

### DISCUSSION

The Court proceeds to outline the settlement terms, and the course of negotiation leading to settlement, before analyzing the terms of the settlement agreement under the standards expressed above, including the request for attorneys' fees and costs, the releases, and the incentive award for the named Plaintiff.

### A.    The Parties' Primary Settlement Terms

This PAGA representative action stems from defendant US Med-Equip's ("Defendant") alleged violations of Labor Code §§ 201, 202, 203, 204, 210, 226, 226.3, 226.7, 227.3, 256, 510, 512, 1174, 1185, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2802, 2804, California Code of Regulations Title 8 Sections 11050 and 11150, and California Industrial Commission Wage Order 4, as to "<u>all individuals who are or were employed by Defendant as hourly paid or non-</u><u>exempt employees in California during the Covered Period</u>" (the "PAGA Settlement Group Members"). The "Covered Period" is defined as August 1, 2022, through December 16, 2023. Plaintiff and the PAGA Settlement Group Members contend that between August 1, 2022, and

1  the date the court grants PAGA approval,[2] Defendant violated the previous cited provisions of

2  the California Labor Code, California Code of Regulations, and California Industrial

3  Commission Wage Order 4.

4        The parties have reached a comprehensive settlement agreement that resolves the claims

5  alleged in this case.  Plaintiff seeks this Court's approval of a $57,500.00 PAGA settlement

6  involving approximately 30 PAGA Settlement Group Members.  Plaintiff argues the settlement

7  merits full approval because it fulfills the purpose of PAGA, *i.e.*, to deter violations of the Labor

8  Code and secure obedience of California's labor laws; to end ongoing violations of the Labor

9  Code either through injunctive relief or a defendant's voluntary changes in light of a PAGA

10  action; and to provide relief that is genuine, meaningful, and consistent with California's goal of

11  benefitting the public through enforcement of labor laws.

12        The Gross Settlement Amount is **$57,500.00**.  (Agreement ¶ 21.)  Plaintiff's counsel are

13  seeking attorneys' fees in the amount of **$17,250.00**, or thirty percent (30%) of the total

14  settlement amount.  (Id. at ¶ 22.)  Plaintiff's counsel seeks costs totaling **$10,519.50**.  (Mot. 6;

15  Agreement ¶ 23.)  Plaintiff seeks settlement administration costs, not to exceed **$2,850.00**.  (Mot.

16  6; Agreement ¶ 25.)   Plaintiff seeks a representative enhancement award in the amount of

17  **$5,000.00**.  (Mot. 6; Agreement ¶ 24.)   This leaves approximately, **$21,880.50** for the Net

18  Settlement Amount (Agreement ¶ 26), which will be disbursed as follows: (1) twenty-five

19  percent (25%) of the Net Settlement Amount for the PAGA Aggrieved Employee Payment

20  (approximately **$5,470.13**); and (2) seventy-five percent (**75%**) of the Net Settlement Amount

21  for the LWDA Payment (approximately **$16,410.37**).  (Mot. 6.)  The allocation among the

22  PAGA Settlement Group Members shall be determined by dividing the number of pay periods he

23  or she worked during the Covered Period by the total aggregate number of pay periods worked

24  by all PAGA Settlement Group Members during the Covered Period and then multiplying this

25  amount by the PAGA Aggrieved Employee Payment.  (Mot. 17.)

26  ───────────────

27  [2]  Here, Plaintiff's motion also states that the Covered Period ends on the date the Court grants approval of the PAGA settlement.  To be clear, the Agreement defines "PAGA Period" as "the period of time beginning on August 1, 2022, through December 16, 2023," and defines "PAGA Members" as "all persons who are employed or were

28  employed by Defendant in the State of California as an hourly paid or non-exempt employee at any time during the PAGA Period."  (See Agreement ¶¶ 11, 12.)

**B.      The Court Approves the Settlement with a Reduction in Attorneys' Fees and Increase in the PAGA Penalty Fund**

1.      Consideration of the Terms of the Settlement, Course of Negotiation, Primary Statutory Requirements and Applicable Fairness Factors Weigh in Favor of Granting Approval of the Settlement

PAGA states that any "proposed settlement shall be submitted to the agency at the same time that it is submitted to the court." Lab. Code. § 2699(l)(2). In satisfaction of that requirement, Plaintiff submitted a copy of the proposed settlement agreement to the LWDA through the LWDA s online filing system. PAGA requires that seventy-five percent (75%) of the civil penalties recovered by aggrieved employees must be allocated to the LWDA, and twenty-five percent (25%) allocated to aggrieved employees. Cal. Lab. Code § 2699(i). As stated above, the settlement in this case allocates the PAGA penalty fund accordingly.

The Court finds the course of negotiation leading to settlement weighs in favor of approval of the settlement. Defendant has denied and continues to deny each and every material factual allegation and alleged claims asserted in the Action and denies that Plaintiff or any other alleged aggrieved employee has been harmed based on the allegations raised in the Action. The Parties dispute the merits of the claims and defenses. The Parties exchanged various documents and information that allowed both sides to evaluate the potential exposure and potential risk, such as a review of policies related to the claims alleged in the Action, a sample of time and pay records, and the necessary data to evaluate the valuation of a PAGA settlement including number of PAGA Settlement Group Members and number of pay periods at issue. (Melmed Decl. ¶ 13.) During this process, Plaintiff's counsel analyzed, researched, and investigated the potential issues, including matters related to the calculation of PAGA damages, interviews of Plaintiff, trial management, and appellate issues and risks. (Id. at ¶ 14.)

The Parties concluded that there were benefits associated with settling the Action and concluded, after considering the sharply disputed factual and legal issues involved in this litigation, the risks associated with further prosecution, the substantial benefits to be received pursuant to the compromise and settlement of the Action as set forth in the Settlement Agreement, as well as Plaintiff's individual claims. (Id. at ¶ 15.) The Parties submit that they

1    believe that settlement on the terms set forth in the Agreement is in the best interest of the

2    Plaintiff, the LWDA, the PAGA Settlement Group Members covered by PAGA, and Defendant,

3    and is fair and reasonable.  (Mot. 7-8.)

4           The Court has reviewed the Plaintiff's descriptions of each cause of action, the various

5    claims and defenses as specifically tailored to each cause of action, and finds the Plaintiff has

6    sufficiently described such as to allow the Court to find the course of negotiation involving

7    expert analysis and mediation, and weighing of the risks of litigation versus the underlying value

8    of the claims, supports finding the settlement as fair and reasonable.  (See Mot. 8-14.)

9           Plaintiff argues Plaintiff contends that a non-reversionary Gross Settlement Amount of

10   $57,500.00 represents an excellent recovery that is large enough to punish or deter Defendant,

11   and provides a fair and reasonable monetary recovery for the LWDA, and the PAGA Settlement

12   Group Members.  Plaintiff proffers that although PAGA and its legislative history do not seem to

13   require a comparison with the "maximum value" of the claims to the actual settlement amount,

14   the penalties are reasonable when considered in this context as well.

15          Plaintiff proffers the number of PAGA Settlement Group Members in the PAGA covered

16   period is only 30 and the number of PAGA-eligible pay periods is approximately 525.  (Melmed

17   Decl. ¶ 41.)   While Plaintiff believes the claims are meritorious and that they would have

18   recovered unreduced penalties, Defendant asserted numerous defenses to the claims.  (Id. at ¶

19   42.)  Plaintiff argues a significant factor in evaluating the value of a PAGA-only case is that all

20   PAGA awards are discretionary and subject to potentially significant reduction by the Court.

21   Here, Defendant maintained that given their good faith and de minimis defenses, this Court

22   would exercise its discretion to substantially reduce any PAGA penalties if it were to find

23   Defendant liable for any of Plaintiff's claims.  See Labor Code §§ 203, 2699(e)(2); Fleming v.

24   Covidien Inc., No. ED CV 10-01487 RGK (OPx), 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12,

25   2011) ("Here, the aggrieved employees suffered no injury due to the erroneous wage statements,

26   and made no complaint of the errors or omissions contained therein prior to filing suit . . .

27   Defendants were not aware that the wage statements violated the law and took prompt steps to

28   correct all violations once notified.  Given these circumstances, the Court finds a $2.8 million

penalty unjust according to § 2699(e)(2) [and] in its discretion, the Court reduces the penalty to $500,000."); Thurman v. Bayshore Transit Mgmt., Inc., 203 Cal. App. 4th 1112, 1135, 138 Cal. Rptr. 3d 130, 149 (2012) ("We conclude that the trial court reasonably determined that an award of the maximum penalty amount would be unjust under the facts and circumstances of this case.").[3]

Additionally, Defendant argued Plaintiff could only seek PAGA penalties at the $100 "initial" violation rate, as opposed to the $200 "subsequent" violation rate, as before Plaintiff initiated this action, Defendant had never been put on notice by a court or the Labor Commissioner that its practices violated the Labor Code.  See Amaral v. Cintas Corp. No. 2, 163 Cal.App.4th 1157, 1209 (2008) (finding "initial" violation rate applies until employer has been notified that it is violating a Labor Code provision).  As a result, Plaintiff gave Defendant the benefit of the "initial" $100.00 per pay period violation as opposed to the $200.00 subsequent per violation rate in calculating penalties.  (Melmed Decl. ¶ 43.)[4]  In light of the foregoing, Plaintiff's Counsel took into consideration the defenses raised and applied the appropriate discounts.  (Id.)

Based upon the data provided by Defendant, Plaintiff calculated the maximum potential exposure for the PAGA claims for PAGA members is $133,400.  (Id. at ¶ 44.)  During the Covered Period, there were approximately 525 pay periods.  (Id.)  Adding PAGA penalties for waiting time (9 former employees = $900), overtime (28 employees = $40,400), meal breaks (23 employees = $8,400), wage statements (30 employees = $52,500), sick pay (19 employees = $8,000), and meal premiums (24 employees = $23,200), totals $133,400 in exposure based on the sampling provided by Defendant according to Plaintiff's expert's analysis.  (Id.)

Based on this maximum total exposure, the total settlement amount of $57,500 is approximately 43% of the maximum potential exposure as calculated by Plaintiff.  Plaintiff argues this settlement is a great result given that Courts can exercise their discretion to reduce the

---

[3]  Plaintiff's citation contains incorrect parentheticals, and while certain quotes are attributed to Thurman, they actually appears in their other cited case, Fleming.  (See Mot. 20-21.)

[4]  Plaintiff's brief repeated incorrectly refers to the attached declaration, as ¶ 42 refers to ¶ 41, ¶ 43 refers to ¶ 42. (See Mot. 20-21.)

1   amount of PAGA penalties.  See Fleming, 2011 WL 7563047, at *4; see also Carrington v.

2   Starbucks, 30 Cal. App. 5th 504, 517, 529 (Ct. App. 2018) ("Although the trial court may have

3   disagreed with Starbucks regarding the issue of liability, it clearly took the circumstances

4   proffered by Starbucks into consideration when it imposed the penalty, as evident from the

5   significant reduction of the $50 maximum penalty (per initial violation) to the penalty imposed—

6   only $5 per initial violation[,] which [t]he trial court stated [] was warranted because imposing

7   the maximum penalty would be unjust, arbitrary, and oppressive based on Starbucks's 'good

8   faith attempts' to comply with meal break obligations and because the court found the violations

9   were minimal.").

10      Plaintiff thus proffers that here, with 525 pay periods at issue, under Carrington, an

11  appropriate settlement amount could be as low as $2,625.00.  (Melmed Decl. ¶ 45.)  Instead,

12  despite the risks of the case identified through mediation and exchange of documents and

13  information with opposing counsel, the Total Settlement Amount of $57,500.00 results in $109

14  for each pay period if assuming a 100% violation rate for all pay periods in the Covered Period.

15  (Id.)  Accordingly, the proposed settlement reflects a better result than some actual PAGA trials

16  that were litigated to completion, though other cases also provided for a greater award than

17  Carrington.  (Id.)  Thus, Plaintiff submits that the PAGA settlement amount is reasonable in light

18  of significant risks and uncertainties associated with the PAGA claims in this case.  (Id.)

19      Plaintiff further proffers the scope of the release of the PAGA Settlement is necessarily

20  strictly confined to those PAGA civil penalties that were or could have been alleged in the

21  Action.  (Melmed Decl. ¶ 47.)  Thus, the PAGA Released Claims do not release any Aggrieved

22  Employee's non-PAGA claims for alleged violations of the Labor Code, and individual PAGA

23  Settlement Group Members who believe they have been denied, for example, minimum wage or

24  overtime, can maintain those rights to pursue those claims in another proceeding.  (Id.)

25      Here, after deductions, the settlement provides a substantial sum of $5,470.13 to the

26  aggrieved employees and $16,410.37 to the LWDA.  (Id. at ¶ 48.)  Plaintiff argues the settlement

27  secured here is greater than other PAGA penalty awards approved by California state courts,

28  which often range between $7,500.00 and $15,000.00 for PAGA claims impacting hundreds or

1  thousands of individuals, resulting in much lower PAGA penalty payments on a per capita basis.

2  See Penaloza v. PPG Industries Inc., Case No. BC471369, 2013 WL 2917624 at *2 (Super. Ct.

3  L.A. County, May 20, 2013) (approving PAGA penalties of $5,000.00 to class of 667 members);

4  Cabrera v. Advantage Sale & Marketing, LLC, Case No. BC485259, 2013 WL 1182822 (Super.

5  Ct. L.A. County, March 12, 2013) (approving PAGA penalties of $10,000.00 for class of

6  approximately 3,000 members).

7      Based on the above, the Court finds the settlement is the result of sufficient negotiations

8  between the Parties and their counsel, including attending a mediation, the course of litigation

9  and negotiation weighs in favor of finding the settlement here is fundamentally fair, reasonable,

10  and adequate in view of PAGA's public policy goals and statutory requirements.  See, e.g.,

11  Beltran, 2023 WL 1467118, at *22 ("The Court is to accord great weight to the recommendation

12  of counsel because they are aware of the facts of the litigation and in a better position than the

13  court to produce a settlement that fairly reflects the parties' expected outcome in the litigation."

14  (citing Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D.

15  Cal. 2004))).  The Court finds the strength of Plaintiff's case, the extent of discovery, the stage of

16  proceedings, the continued risk and expense, and the potential duration of further litigation in

17  light of trial, weigh in favor of granting approval of the PAGA settlement.  See Fleming, 2011

18  WL 7563047, at *4; Carrington, 30 Cal. App. 5th at 517, 529.

19      The court finds that the PAGA settlement meets the general statutory requirements, and

20  the settlement amount is fundamentally fair, reasonable, and adequate in view of the purposes of

21  the statute.  Arias v. Superior Ct., 46 Cal. 4th at 980-81; Iskanian, 59 Cal. 4th at 381; Perez, 2021

22  WL 3129602, at *3; O'Connor, 201 F. Supp. 3d at 1133.  Additionally, as discussed below, the

23  Court reduces the requested attorneys' fees from the requested 30% of the total settlement

24  amount, to the benchmark of 25%, thereby increasing the total monetary amount that will be

25  awarded to the LWDA and the aggrieved employees.

26      The Court now turns to the consider the incentive awards, the settlement releases, the

27  attorneys' fee request, and the costs requests, to determine if they are also fundamentally fair,

28  reasonable, and adequate in view of the mandates and purposes of PAGA.

1    2.    The Settlement Releases and Incentive Award

2    The Court discusses the settlement releases at the same time as the incentive award, given

3 it appears the named Plaintiff has agreed to an additional general release compared to the more

4 limited release applicable to the PAGA representative.

5    **a.    General Legal Standards**

6    Incentive awards are "intended to compensate class representatives for work done on

7 behalf of the class, to make up for financial or reputational risk undertaken in bringing the action,

8 and, *sometimes, to recognize their willingness to act as a private attorney general*." Rodriguez

9 v. W. Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009) (emphasis added).[5]   They are

10 considered "fairly typical in class actions cases," Id. at 958 (emphasis omitted), and "are

11 particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant

12 'reputational risk' by bringing suit against their former employers." Bellinghausen v. Tractor

13 Supply Co., 306 F.R.D. 245, 267 (N.D. Cal. 2015) (citation omitted); see also In re Online DVD-

14 Rental Antitrust Litig., 779 F.3d 934, 943 (9th Cir. 2015) (holding that the incentive payments to

15 the class representative by themselves do not create an impermissible conflict between the class

16 members and the class representatives).

17    In assessing the appropriateness of class representative enhancements or incentive

18 payments, the Court must consider factors such as: (1) the actions the plaintiff took to protect

19 the interests of the class; (2) the degree to which the class has benefitted from those actions; (3)

20 the duration of the litigation and the amount of time and effort the plaintiff expended in

21 pursuing litigation; and (4) any notoriety or personal difficulties encountered by the

22 representative plaintiff. Khanna v. Intercon Sec. Systems, Inc., No. 2:09-CV-2214 KJM EFB,

23 2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014); Reibstein v. Rite Aid Corp., 761 F. Supp.

24 2d 241, 257 (E.D. Penn. 2011); see also Staton v. Boeing Co., 327 F.3d 938, 975–77 (9th Cir.

25 2003).

26    In the Ninth Circuit, courts have found that $ 5,000 is a presumptively reasonable service

27

---

28 [5]  The Court recognizes that much of the caselaw cited here pertains to incentive awards for class action settlements, or class action settlements incorporating a concurrent PAGA settlement.

award.  See Harris v. Vector Marketing Corp., No. C-08-5198 MEC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases).  Where the representative seeks an award over the "presumptively reasonable" amount, many courts in this Circuit also consider the proportionality between the incentive payment and the range of class members' settlement awards and the settlement amount to determine whether the requested incentive payment is excessive.  See id. (collecting cases); Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014); Hopson v. Hanesbrands Inc., No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009).  Importantly, such payments must be "scrutinize[d] carefully ... so that they do not undermine the adequacy of the class representatives."  Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1168 (9th Cir. 2013) (citing Staton, 327 F.3d at 977).  Given that service awards are at the discretion of the district court, In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000), whatever the method used, the Court must make sure that where there is a "very large differential in the amount of damage awards between the named and unnamed class members," that differential is justified by the record.  Staton, 327 F.3d at 978.

Importantly, "[u]nlike Rule 23(c)(2), PAGA has no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action."  Sakkab v. Luxottica Retail N. Am., Inc., 803 F.3d 425, 436 (9th Cir. 2015) (citation omitted); see also O'Connor, 201 F. Supp. 3d at 1133 ("[B]ecause the employee's PAGA action acts as a 'substitute' for a governmental action, the judgment binds all those who would be bound by an action brought by the government, including nonparty employees . . .[t]hus, in a lawsuit which asserts a PAGA claims and seeks class certification for labor/wage claims, even class members who opt out of the class would be bound by an adverse PAGA judgment or settlement.") (emphasis in original).  Therefore, special attention should be paid to the scope of the release that is applicable to the PAGA members.

### b.   The Court finds the Settlement Releases and Incentive Award are Proper

Plaintiff argue that given the California Supreme Court has explained that a judgment in "a representative action brought by an aggrieved employee under the Labor Code Private Attorneys General Act of 2004 ... is binding not only on the named employee plaintiff but also

on government agencies and any aggrieved employee not a party to the proceeding," <u>Arias</u>, 46 Cal. 4th at 985-986, accordance with this rule, the release in the Settlement Agreement narrowly covers the claims for civil penalty Representative Plaintiff brought under Labor Code § 2699 and not the claims for the alleged underlying violations.   The "Released Claims" are defined as follows in the Agreement:

> **"Released Claims"** means all claims for civil penalties under PAGA arising from the same facts and/or claims alleged in the Action, or claims that were pled or that could have been pled based on the facts alleged in the Complaint and the LWDA letter, including but not limited to: (A) claims for failure to pay all wages due (including minimum wages, straight time wages, and overtime wages), failure to provide compliant meal periods, failure to authorize and permit compliant rest periods, failure to provide accurate and itemized wage statements, failure to maintain required records, failure to timely pay all wages due during employment and at the time of termination, failure to reimburse employees for all business-related expenses, and any claims based on alleged violations of California Labor Code sections 201, 202, 203, 204, 210, 226, 226.3, 226.7, 227.3, 246, 256, 510, 512, 1174, 1185, 1194, 1194.2, 1198, 1198.5, 1199, 2699, and 2802,, and the California Industrial Welfare Commission Wage Orders based on the preceding claims, which arose during the PAGA period; (B) all claims that Defendant is liable for attorney's fees and costs incurred in the prosecution of this Action on behalf of the PAGA members; (C) all claims that Defendant is liable for any other remedies, penalties, or interest based on the facts alleged in the Action; (D) all claims that Plaintiff and/or the PAGA Members may have against the Released Parties relating to the payment, taxation, and allocation of attorney's fees and costs to PAGA Counsel pursuant to the Settlement Agreement; and (E) all claims that could have been pled arising out of the same operative facts. The period of the release shall extend to the limits of the PAGA Period. The *res judicata* effect of the judgment will be the same as that of the Release.

(Mot. 18-19; Agreement ¶ 27, ECF No. 18-2 at 5-6.)

The Agreement provides a separate section entitled "<u>Release by PAGA Members</u>" which specifies, *inter alia*, that "Upon the Funding Date, Plaintiff shall, on behalf of herself, the State of California, and all PAGA Members, release the Released Parties from the Released Claims during the PAGA Period.  PAGA Members may discover facts in addition to those they now know or believe to be true with respect to the subject matter of the Released Claims, but upon the Effective Date, PAGA Members shall be deemed to have, and by operation of the Order approving the Long Form Settlement Agreement, shall have, fully, finally, and forever settled

1    and release any and all of the Released Claims during the PAGA Period . . ." (Agreement ¶ 44,

2    ECF No. 18-2 at 9.)

3         The Agreement also includes a section entitled "General Release by Plaintiff" which

4    provides an additional release by "Plaintiff, for and on behalf of herself and her spouses,

5    representatives, agents, attorneys (including PAGA Counsel), heirs, administrators, successors,

6    and assigns ("Releasing Parties") hereby unconditionally waives, releases forever and forever

7    discharges the Released Parties from any and all claims, actions . . . of any nature whatsoever . . .

8    that they may possess arising from any omissions, acts, any and all events or facts that have

9    occurred up until and including the date of the singing of this Agreement . . ." (Agreement ¶ 45,

10   ECF No. 18-2 at 9.)  This section also provides for a waiver of all rights under Section 1542 of

11   the California Civil Code.  (Id.)

12        Counsel declares that "[t]he scope of the release of the PAGA Settlement is necessarily

13   strictly confined to those PAGA civil penalties that were or could have been alleged in the

14   Action," "[t]he PAGA Released Claims do not release any Aggrieved Employee's non-PAGA

15   claims for alleged violations of the Labor Code," and "[i]ndividual PAGA Settlement Group

16   Members who believe they have been denied, for other wages can maintain those rights to pursue

17   those claims in another proceeding." (Melmed Decl. ¶ 47.)

18        The Plaintiff's motion does not apparently describe the general release nor its relation to

19   the individual incentive payment, nor does it argue the incentive payment of $5,000 was

20   provided in consideration of the additional general release.  Based on the large differential

21   between the payment amounts the PAGA employees will receive versus the incentive award, the

22   Court would normally be inclined to weigh various factors to determine whether the award

23   should be reduced.  Nonetheless, given the incentive payment is at the benchmark level, the

24   Court does not find it necessary to determine what portion of the incentive payment could be tied

25   to an amount attributed to the general release of Plaintiff's individual claims.  Instead, based on

26   the award being at the benchmark level, and based on the Plaintiff's general release, the Court

27   finds the incentive award of $5,000 to be fair and reasonable given the various factors before the

28   Court.  See Harris, 2012 WL 381202, at *7 (noting in the Ninth Circuit, courts have found that $

1   5,000 is a presumptively reasonable service award) (collecting cases).

2       Further, in light of the Court's findings regarding the settlement amount and other terms

3   being fundamentally fair, reasonable, and adequate, the Court finds the limited PAGA release

4   applicable to all aggrieved employees during the relevant time period appropriate.  See Sakkab,

5   803 F.3d at 436; O'Connor, 201 F. Supp. 3d at 1133.

6       Therefore, the Court finds the limited PAGA release, the Plaintiff's general release, and

7   the Plaintiff's incentive/release award amount is a fair and reasonable aspect of the overall

8   settlement of this PAGA action.  The Court shall grant the incentive payment of $5,000.

9       3.    Attorneys' Fees and Costs

10      The court now turns to the attorneys' fees provision of the Agreement.   Under the

11  Agreement, from the Gross Settlement Amount of $57,500.00, attorneys' fees will be no more

12  than 30% of the Gross Settlement Amount (or $17,250.00).[6]  (Agreement ¶ 22, ECF No. 18-2 at

13  4.)  Under the Agreement, costs shall be awarded up to actual costs incurred, and counsel are

14  seeking $10,519.50, in actual litigation costs.

15      **a.    General Legal Standards**

16      The relevant provision of PAGA provides that "[a]ny employee who prevails in any

17  action shall be entitled to an award of reasonable attorney's fees and costs."  Cal. Lab. Code

18  § 2699(g)(1).

19      The Ninth Circuit has approved two methods for determining attorneys' fees cases where

20  the attorneys' fee award is taken from a common fund set aside for the entire settlement: the

21  "percentage of the fund" method and the "lodestar" method.  Vizcaino v. Microsoft Corp., 290

22  F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).   The district court retains discretion in

23  "common fund cases" to choose either method.  Id.; Vu v. Fashion Inst. of Design & Merch., No.

24  14-cv-08822-SJO-EX, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016).

25      Under either approach, "[r]easonableness is the goal, and mechanical or formulaic

26  application of method, where it yields an unreasonable result, can be an abuse of discretion."

---

27  [6] Again, while the motion refers in various points to attorneys' fees in the amount of 1/3 of the Gross Settlement
28  Amount or 33⅓%, the actual amount of $17,250.00, which reflects 30%, is correctly stated throughout the motion.
    The Agreement itself specifies the amount is 30%.  (Agreement ¶ 22, ECF No. 18-2 at 4.)

1   Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1007 (9th Cir. 2002).   The

2   Ninth Circuit has generally set a twenty-five percent (25%) benchmark for the award of

3   attorneys' fees in common fund cases.   Id. at 1047–48; see also In re Bluetooth, 654 F.3d at 942

4   ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award,

5   providing adequate explanation in the record of any 'special circumstances' justifying a

6   departure.").

7        Reasons to vary the benchmark award may be found when counsel achieves exceptional

8   results for the class, undertakes "extremely risky" litigation, generates benefits for the class

9   beyond simply the cash settlement fund, or handles the case on a contingency basis.   Vizcaino,

10  290 F.3d at 1048–50; see also In re Online DVD-Rental, 779 F.3d at 954–55.   Ultimately,

11  however, "[s]election of the benchmark or any other rate must be supported by findings that take

12  into account all of the circumstances of the case."   Vizcaino, 290 F.3d at 1048.   The Ninth

13  Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness

14  of a particular percentage recovery of a common fund.   Id. at 1050 ("Where such investment is

15  minimal, as in the case of an early settlement, the lodestar calculation may convince a court that

16  a lower percentage is reasonable.   Similarly, the lodestar calculation can be helpful in suggesting

17  a higher percentage when litigation has been protracted."); see also In re Online DVD-Rental,

18  779 F.3d at 955.

19        Even where the parties have agreed to the attorney fee award, "courts have an

20  independent obligation to ensure that the award, like the settlement itself, is reasonable[.]"   In re

21  Bluetooth, 654 F.3d at 941.   "[A] district court must carefully assess the reasonableness of a fee

22  amount  spelled  out  in  a class action settlement  agreement"  to  determine  whether  it  is  "

23  'fundamentally fair, adequate, and reasonable'  Fed. R. Civ. P. 23(e)."   Staton, 327 F.3d at 963.

24  A court "may not uncritically accept a fee request," but must review the time billed and assess

25  whether  it  is  reasonable  in  light  of  the  work  performed  and  the  context  of  the

26  case.   See Common Cause v. Jones, 235 F .Supp. 2d 1076, 1079 (C.D. Cal. 2002); see

27  also McGrath v. Cnty. of Nev., 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting a court may not

28  adopt representations regarding the reasonableness of time expended without independently

1  reviewing the record); <u>Sealy, Inc. v. Easy Living, Inc.</u>, 743 F.2d 1378, 1385 (9th Cir.

2  1984) (remanding an action for a thorough inquiry on the fee request where "the district court

3  engaged in the 'regrettable practice' of adopting the findings drafted by the prevailing party

4  wholesale" and explaining a court should not "accept[ ] uncritically [the] representations

5  concerning the time expended").

6      The party seeking fees bears the burden of establishing that the fees and costs were

7  reasonably necessary to achieve the results obtained.   <u>See</u> <u>Fischer v. SJB–P.D., Inc.</u>, 214 F.3d

8  1115, 1119 (9th Cir. 2000).   Therefore, a fee applicant must provide time records documenting

9  the tasks completed and the amount of time spent.   <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 424

10  (1983); <u>Welch v. Metro. Life Ins. Co.</u>, 480 F.3d 942, 945–46 (9th Cir. 2007).   "Where the

11  documentation of hours is inadequate, the district court may reduce hours accordingly."

12  <u>Hensley</u>, 461 U.S. at 433.

13      Courts have noted that "[c]alculating attorneys' fees under this provision [of PAGA]

14  requires application of the lodestar."   <u>Perez</u>, 2021 WL 3129602, at *5 (collecting cases).

15  Plaintiff's motion acknowledges the Court's discretion to utilize either method, however submits

16  argument primarily under the common fund method.   (See Mot. 23-29.)   Plaintiff emphasizes the

17  California Supreme Court has noted "[t]he recognized advantages of the percentage method—

18  including relative ease of calculation, alignment of incentives between counsel and the class, a

19  better approximation of market conditions in a contingency case, and **the encouragement it**

20  **provides counsel to seek an early settlement and avoid unnecessarily prolonging the**

21  **litigation** . . . convince us the percentage method is a valuable tool that should not be denied our

22  trial courts."   <u>Laffitte v. Robert Half Internat. Inc.</u>, 1 Cal. 5th 480, 503, 376 P.3d 672, 686 (2016)

23  (emphasis added).

24      **b.**     **Percentage of Common Fund Award**

25      In the Ninth Circuit, courts typically utilize twenty-five percent of the common fund as

26  the "benchmark" for a reasonable fee award, with adjustments provided there is adequate

27  explanation in the record for any special circumstances that justify departure.   <u>In re Bluetooth</u>,

28  654 F.3d at 942.   Prior to <u>In re Bluetooth</u>, the Ninth Circuit noted the usual range for common

fund attorney fees is between twenty to thirty percent.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).  Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis.  Vizcaino, 290 F.3d at 1048–50; see also In re Online DVD-Rental, 779 F.3d at 954–55.

First, Plaintiff argues Counsels' efforts resulted in a common fund settlement amount of $57,500, which is a great PAGA settlement considering the contested issues.  The Court finds the settlement good result considering the proffered total maximum value, however, considering the proposed actual amount to be awarded to the LWDA and the aggrieved employes, the amount is not as significant, and further considering the costs of mediation and data analysis, while not facially unreasonable, are quite significant when considering the settlement amount as a whole.

Second, Plaintiff argues she faced significant risks going forward with the litigation, as discussed above.  Third, Plaintiff emphasizes counsel are experienced representative and class action litigators, and have previously achieved significant PAGA and class action awards, and argues this experience and expertise, combined with the high quality of work performed in this case by Plaintiff's Counsel, resulted in the settlement achieved.

While the Court finds the risks discussed above lend to finding the total settlement amount, awarded after negotiation, mediation, and data analysis, to be fair and reasonable, the Court does not find the common type of PAGA claims presented here, and the course and length of litigation (acknowledging early settlement is not a negative factor), indicates this was an "extremely risky" type of litigation.  See Vizcaino, 290 F.3d at 1048–50.  While counsel does argue that there is risk in dealing with defendants similar to the defendant company here, noting other companies of this size they are litigating against have declared bankruptcy, and other cases have negative multipliers, Plaintiff does not present specific factors that meaningfully signify or convince the Court argue this action presented anything beyond the general litigation risk faced in any PAGA action.  (See Mot. 27:24-27.)

Plaintiff notes the Court should consider the "non-monetary relief from which the PAGA

1    Settlement Group Members have already benefited," (Mot. 29:6-7), however, after that, Plaintiff

2    does not specifically describe what such non-monetary relief is that should sway the analysis.

3    Thus, Plaintiff has not demonstrated the settlement achieved general benefits for the aggrieved

4    employees beyond the monetary settlement amount.[7]

5         While the Court acknowledges the total settlement amount is a significant percentage of

6    the proffered maximum value of the claim, there is nothing to indicate that this amount was not

7    the natural settlement reached after routine data analysis and a mediation session, which costs of

8    both are not insignificant when considering the total settlement amount and the amount that will

9    ultimately be received by the LWDA and the aggrieved employees.  The Court does not find the

10   risk to reward contingency nature of this case different than common class or PAGA actions

11   against employers, as to justify an upward departure, in relation to the other relevant Vizcaino

12   factors.  Considering all of the factors, and the amount of settlement in conjunction, this factor of

13   risk does not weigh in favor of increasing the attorneys' fees beyond the benchmark.

14        The Court acknowledges the requested benchmark represents less than some fee awards

15   in wage-and-hour class actions in California (Mot. 28).  See, e.g., Stuart v. Radio Shack Corp.,

16   No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug 9, 2010) (noting benchmark of 1/3 of

17   total settlement was within range of percentages courts have held reasonable in other class action

18   lawsuits); Romero v. Producers Dairy Foods, Inc., No. 1:05cv00484 DLB, 2007 WL 3492841, at

19   *4 (E.D. Cal. Nov. 14, 2007) (awarding benchmark fees of 1/3 of total settlement in wage and

20   hour class action).

21        Nonetheless, because both the Ninth Circuit and this Court have applied a twenty-five

22   ─────────────────────
23   [7]  For example, in Vizcaino, through the course of litigation, "Microsoft agreed to hire roughly 3000 class members
     as regular employees and to change its personnel classification practices, a benefit counsel valued at $101.48 million
     during the 1999–2001 period alone."  Vizcaino, 290 F.3d at 1049.  Further, the scope of the litigation impacted the
24   view of employment law nationwide, as "[t]he court observed that the litigation also benefitted employers and
     workers nationwide by clarifying the law of temporary worker classification [and] noted that as a result of this
     litigation, many workers who otherwise would have been classified as contingent workers received the benefits
25   associated with full time employment."  Id.; see also Ramirez, 2017 WL 3670794, at *5 ("[T]he settlement's
     injunctive relief provides that Defendant will comply with California wage and hour laws in the future, that
26   Defendant will join a Farm Employer Association . .  that Defendant will ensure that employees are fully trained to
     prevent and respond to claims of sexual harassment  . . . that Defendant will hold meetings to discuss preventing
27   sexual harassment and retaliation with Defendant's crew foreperson every harvesting season and will provide a
     telephone number to report harassment in English or Spanish . . . [and] that Defendant will submit to an audit of its
28   payroll by Plaintiff's counsel in March 2018.").

percent benchmark for the award of attorneys' fees in common fund cases, see In re Bluetooth, 654 F.3d at 942; Rodriguez v. M.J. Brothers, Inc. (M.J. Brothers), No. 1:18-cv-00252-LJO-SAB, 2019 WL 3943856 (E.D. Cal. Aug. 21, 2019), for the other aforementioned reasons, the Court finds an attorneys' fees award of 25% is reasonable under the percentage method.  Further, it appears that much of the expert analysis is paid through the costs portion.  (Mot. 30.)

Twenty-five percent the total settlement fund yields an attorneys' fees award of $14,375.00.[8]  The lodestar cross-check that the Court performs next confirms the appropriateness of awarding fees at no more than the benchmark level.

### b.   Lodestar Check Supports Reduction in Requested Fees

The "lodestar" approach calculates attorney fees by multiplying the number of hours reasonably expended by a reasonable hourly rate.  Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).

Plaintiff does not expressly present a lodestar proffer or calculation in the body of the motion's principal brief.  (See Mot. 23-30.)  Plaintiff generally proffers that, in arguing the requested percentage amount is reasonable, that Plaintiff's counsel are experienced class and representative action litigators, and emphasize early settlement should not preclude significant percentage of the fund awards, and argue their experience and expertise combined with high quality of work resulted in the settlement achieved.  (Mot. 27-28.)  Plaintiff notes that counsel's experience is described in the attached declaration.  (Mot. 28-29.)

Having presented the Court with no lodestar calculation, the Court could simply find the fee should be reduced to 25% based on the above factors, and lack of a lodestar proffer for the Court to perform a lodestar crosscheck.  Nonetheless, the Court has reviewed and considered the information in the attached declaration.

/ / /

/ / /

/ / /

---

[8] $57,500 ÷ 4 = $14,375.

In reviewing the attached declaration, it contains a table describing counsel and paralegal's experience, hours expended, hourly rate, and total fees if using such hours and hourly rates, as follows:

| Name | Title | Years Exp. | Hours | Rate | Amount |
|------|-------|-----------|-------|------|--------|
| Jonathan Melmed | Attorney | 10 | 3 | $733.00 | $2,199.00 |
| Megan E. Ross | Attorney | 20 | 18.2 | $997.00 | $18,145.40 |
| Hannah Becker | Attorney | 1 | 13.4 | $413.00 | $5,534.20 |
| Lorie Gutierrez | Paralegal | 7 | 2 | $225.00 | $450.00 |
| **Total:** | | | | | **$26,328.60** |

(Melmed Decl ¶ 52, ECF No. 18-1 at 26.)

The Court finds the hourly fees used to calculate this amount must be reduced to reflect the market rate within this community. The Supreme Court explained that attorney fees are to be calculated with "the prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895–96, n.11 (1984). In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." Camacho, 523 F.3d at 979. Thus, when a case is filed in the Fresno Division of the Eastern District of California, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate..." See Jadwin v. Cnty. of Kern, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011).[9]

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers

---

[9] At least one judge in this district has found it may utilize rates in Sacramento, for cases in the Fresno Division. See Perez, 2021 WL 3129602, at *5 ("The court recognizes that judges in the Eastern District of California frequently distinguish between the Fresno and Sacramento communities in determining hourly rates . . .[t]his court has located no authority indicating that hourly rates for attorneys in Sacramento may not be used to guide the court's award of such fees in cases originating in Fresno, particularly in specialized fields of litigation [as] the typical approach looks to the *district* in which the court sits [and] the undersigned would note that according to the Local Rules of this court, this is not a district court with separate divisions, as many are, but rather is a single district sitting in designated locations for venue purposes." (emphasis in original)).

of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895 n.11. "Though affidavits provide satisfactory evidence of the prevailing market rate, they are not conclusive … [and] Courts should rely on their own familiarity with the market … bas[ing] their rates on the standards of the legal community in which the court sits." Cal. Ass'n of Rural Health Clinics v. Douglas, No. 2:10-cv-00759-TLN-EFB, 2014 WL 5797154, at *3 n.7 (E.D. Cal. Nov. 6, 2014).

Thus, this Court also relies on its own knowledge of customary legal local rates and experience with the legal market in setting a reasonable hourly rate. Ingram v. Oroudjian, 647 F.3d 925, 926 (9th Cir. 2011). In the Fresno Division of the Eastern District of California, across a variety of types of litigation, generally, attorneys with experience of twenty or more years of experience are awarded $350.00 to $400.00 per hour; attorneys with ten to twenty years of experience are awarded $250.00 to $350.00 per hour; attorneys with five to ten years of experience are awarded $225.00 to $300.00 per hour; and less than $200.00 per hour for attorneys with less than five years of experience. See Freshko Produce Servs., Inc. v. Write On Mktg., Inc. (Freshko), No. 1:18-cv-01703-DAD-BAM, 2019 WL 3798491, at *2–3 (E.D. Cal. Aug. 13, 2019), report and recommendation adopted, 2019 WL 5390563 (E.D. Cal. Oct. 22, 2019) (finding that "[i]n the Fresno Division of the Eastern District of California, attorneys with twenty or more years of experience are awarded $350.00 to $400.00 per hour," that "$300 is the upper range for competent attorneys with approximately a decade of experience," and that the accepted range for attorneys with less than ten years of experience "is between $175 and $300 per hour"; and awarding $350 per hour to attorney with approximately 27 years of experience, and $175 per hour to attorney with "approximately four years of experience") (citations omitted).[10]

---

[10]  See also Garcia v. FCA US LLC, No. 1:16-cv-0730-JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding $400.00 per hour to attorney with nearly thirty years of experience; $300.00 per hour to attorney with nearly fifteen years of experience; $250.00 per hour to attorney with ten years of experience; $225.00 per hour to attorneys attorney with five years of experience; and $175.00 per hour to attorney with less than five years of experience); Est. of Casillas v. City of Fresno, No. 1:16-cv-01042-AWI-SAB, 2020 WL 869117, at *4–5, *11 (E.D. Cal. Feb. 21, 2020), appeal dismissed in part, No. 19-16436, 2020 WL 3470092 (9th Cir. Jun. 5, 2020), and appeal dismissed, No. 19-16436, 2021 WL 3758352 (9th Cir. Aug. 18, 2021) (reducing requested rate of $1,200.00 to $400.00 per hour for attorney with thirty-five years of experience, who was considered "accomplished and reputable … with many [] years of experience in civil rights cases and other types of litigation requiring competent trial

This Court recently recommended reducing a request for a $919 per hour fee to $450 per hour, where the attorney had twenty-four (24) years of experience.  See Jackson v. Fastenal Co., No. 120CV00345JLTSAB, 2022 WL 11147310, at *14 (E.D. Cal. Oct. 19, 2022) ("Plaintiff has not established the requested rate . . . of $919.00 is reasonable [and] [r]ather, relying on its own knowledge of customary legal local rates and experience with the legal market in the Fresno Division. . . and accounting for [counsel's] extensive and exclusive experience in employment litigation, the Court concludes a reasonable rate for an attorney with [such] breadth of experience is $450.00 per hour.").

"Generally, paralegal rates within the Fresno Division of the Eastern District range between $75 to approximately $150.00."  Durham v. FCA US LLC, No. 2:17-CV-00596-JLT, 2020 WL 243115, at *9 (E.D. Cal. Jan. 16, 2020).  See also Gilbert v. HBA Enterprises, Inc., No. 121CV01358JLTSAB, 2022 WL 2663761, at *17 (E.D. Cal. July 11, 2022); Trujillo v. Lakhani, No. 117CV00056LJOSAB, 2017 WL 1831942, at *8 (E.D. Cal. May 8, 2017); Trujillo v. Harsarb, No. 121CV00342NONESAB, 2021 WL 3783388, at *14-15 (E.D. Cal. August 26, 2021).

Again, counsel has not submitted a lodestar proffer, and only generally describes the types of tasks performed by the attorneys and paralegal to reach the above total amount of hours for each timekeeper.  (See Melmed Decl. ¶ 53 ("Plaintiff's Counsel has spent a considerable amount of time extensively investigating, researching, and litigating this matter, including but

work"); Mike Murphy's Enters., Inc. v. Fineline Indus., Inc., No. 1:18-cv-0488-AWI-EPG, 2018 WL 1871412, at *3 (E.D. Cal. Apr. 19, 2018) (awarding $325.00 per hour as requested by attorney with over twenty years of experience; $300.00 per hour as requested by attorney with nearly twenty years of experience; and $250.00 per hour as requested by attorney with seven years of experience); TBK Bank, SSB v. Singh, No. 1:17-cv-00868-LJO-BAM, 2018 WL 1064357, at *8 (E.D. Cal. Feb. 23, 2018), report and recommendation adopted, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018) (awarding $400.00 per hour to attorneys with over thirty-five years of experience; $350.00 per hour to attorney with twenty years of experience; and $300.00 per hour to attorney with ten years of experience); Phillips 66 Co. v. Cal. Pride, Inc., No. 1:16-cv-01102-LJO-SKO, 2017 WL 2875736, at *16 (E.D. Cal. Jul. 6, 2017), report and recommendation adopted, 2017 WL 3382974 (E.D. Cal. Aug. 7, 2017) (awarding $400.00 per hour to attorney with twenty years of experience); Roach v. Tate Publ'g & Enters., No. 1:15-cv-00917-SAB, 2017 WL 5070264, at *10 (E.D. Cal. Nov. 3, 2017) (awarding $325.00 per hour to attorney with sixteen years of experience in copyright action); Sanchez v. Frito-Lay, Inc., No. 1:14-cv-00797-AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015) (awarding $350.00 per hour to attorneys with more than twenty years of experience in wage and hour class action; and $275.00 per hour to attorney with fourteen years of experience); Englert v. City of Merced, No. 1:18-cv-01239-NONE-SAB, 2020 WL 2215749, at *13 (E.D. Cal. May 7, 2020) (awarding $450.00 per hour to partner with nineteen years of experience; $400.00 per hour to senior associate attorney with an unspecified number of years of experience; and $325.00 per hour to associate with eight years of experience).

not limited to the following: a. Reviewing Plaintiff's documents, speaking to Plaintiff, preparing the notice to the LWDA, drafting and preparing the complaints, legal research into the viability of Plaintiff's claims; b. Reviewing data and documents produced in informal discovery by Defendant; c. Preparing for and attending mediation; d. Preparing the Settlement Agreement and moving papers for approval; e. Negotiating and corresponding with Defendant's counsel in reaching the settlement at issue before the Court; and f. Preparing and appearing for approval.").

Counsel additionally proffers they expect to expend an additional 8 hours of work between the time of filing of the motion and the conclusion of the matter, including time spent corresponding with the settlement administrator, corresponding with our client and PAGA Settlement Group Members, writing tax letters to our client, notifying the LWDA of the approval order, shepherding the approved settlement through funding and distribution, and other typical and reasonably necessary tasks that arise post-final approval.  (Melmed Decl. ¶ 53.)  As a rough calculation, even taking the upper limit, or slightly above from the before expressed hourly rates generally awarded in the Fresno Division, and adding two hours to the total hours for each attorney and paralegal to add the anticipated 8 hours of additional work (though the Court assumes these tasks will mostly be done by lower rated attorneys or paralegal), yields a lodestar of $14,380.00, essentially equal to the 25% benchmark amount of $14,375:

| Name | Title | Years Exp. | Hours | Rate | Amount |
|------|-------|-----------|-------|------|--------|
| Jonathan Melmed | Attorney | 10 | 5 | $350.00 | $1,750.00 |
| Megan E. Ross | Attorney | 20 | 20.2 | $450.00 | $9,090.00 |
| Hannah Becker | Attorney | 1 | 15.4 | $200.00 | $3,080.00 |
| Lorie Gutierrez | Paralegal | 7 | 4 | $115.00 | $460.00 |
| **Total** | | | | | **$14,380.00** |

Again, this is giving the benefit of the doubt as to hours, adding 2 hours to each total for the anticipated time, despite no detailed timesheets provided to even support any lodestar check. Indeed, the information provided is not even block billing, as no dates or tasks are delineated at

all, and instead only the total amount of hours expended in the entire action is provided.[11]   This is of course problematic for a lodestar check.  Further here, the Court is unable to determine what time expended was related to the class claims originally brought but dismissed from the action.

Accordingly, the Court finds the lodestar rough calculation supports the Court's finding that an award at the benchmark level of 25% is appropriate.  The Court shall grant an attorneys' fee of 25% of the total settlement amount, or **$14,375.00**.  The reduced amount results in a greater amount for the PAGA penalty fund, as the Court calculates below.

### c.    The Requested Litigation Costs Are Reasonable

PAGA also allows a prevailing Plaintiff to recover litigation costs.  Cal. Lab. Code § 2699(g)(1).  The Agreement defines "Attorneys' Costs," in part, as "such litigation costs as the Court may award to PAGA Counsel for the costs they have incurred and will incur in the investigation, litigation, and resolution of the Action, and in administration of the Settlement. This amount will cover any and all actual litigation costs incurred in connection with this Action, as supported by a declaration from PAGA . . . [and] will be funded by the GSA."  (Agreement ¶ 23, ECF No. 18-2 at 4-5.)

Plaintiff's counsel claims the actual litigation costs incurred in this action are $10,519.50, including anticipated costs forthcoming related to this motion and completing the settlement. (Melmed Decl. ¶ 60.)  The costs are laid out in a table as follows:

| Type | Description | Charge |
|---|---|---|
| Mediation Fees | Mediation Fees | $5,125.00 |
| PAGA Fee | PAGA Filing Fee | $75.00 |
| Service of Process | Service of Process | $88.30 |

---

[11]  "Block billing is a practice where the amount of time spent by an attorney on each discrete task is not identified, but instead all hours spent during the course of a day on multiple tasks are billed together."  Yeager v. Bowlin, No. CIV 2:08-102 WBS JFM, 2010 WL 1689225, at *1–2 (E.D. Cal. Apr. 26, 2010).  "The California State Bar's Committee on Mandatory Fee Arbitration has concluded that block billing 'hides accountability' and may 'increase time by 10% to 30%' by lumping together tasks."  Id.  "More importantly, the usage of block billing is fundamentally inconsistent with the lodestar method because it 'render[s] it virtually impossible to break down hours,' leaving the court without the ability to accurately determine whether a reasonable amount of time was spent by counsel on a discrete task."  Id. (quoting Bell v. Vista Unified Sch. Dist., 82 Cal.App.4th 672, 689 (2000)).

| Postage | PAGA Letters | $18.00 |
|---|---|---|
| Postage | Personnel Records Requests | $1.20 |
| Legal Work | Berger Consulting Group Invoice – Data Analysis | $4,560.00 |
| Court Filing Fee | Filing Fee (EDCA) | $402.00 |
| Anticipated Costs | Anticipated Costs | $250.00 |
| **Total** | | **$10,519.50** |

(ECF No. 18-1 at 29.)

The Court has reviewed counsels' declarations, which attest to the costs they incurred, as well as the exhibits attached thereto, and finds the expenses incurred to be reasonable. Accordingly, the Court approves reimbursement of expenses in the amount requested in the amount of $10,519.50, as fair, adequate, reasonable, and consistent with PAGA's policies. However, the Court notes that it finds the amount of data analysis costs, classified as "Legal Work," somewhat reinforces maintaining the common fund attorneys' fees at 25%, given the somewhat significant costs related to the total settlement amount.

### d. The Administration Costs Are Reasonable

The Parties have agreed to use ILYM Group as the Settlement Administrator.  (Melmed Decl. ¶ 62.)  The Settlement Administrator will be responsible for processing the settlement payments for the PAGA Settlement Group Members.  (Id.)  The actual cost of administration of the settlement by the Settlement Administrator designated in the Settlement Agreement will not exceed **$2,850.00**.  (Id.)  The Court finds these administration costs are reasonable and will grant approval of this aspect of the settlement agreement.

/ / /

/ / /

/ / /

/ / /

/ / /

**V.**

**ORDER**

The Court finds the settlement and its terms meets the statutory requirements set forth by PAGA; and are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals.  Cal. Lab. Code §§ 2699(a), 2699.3; <u>O'Connor</u>, 201 F. Supp. 3d at 1133; <u>Officers for Justice</u>, 688 F.2d at 625; <u>Perez</u>, 2021 WL 3129602, at *4.  The Court finds Plaintiff has fairly and adequately protected the interests of the State, and Plaintiff's Counsel are qualified to serve as counsel for the Plaintiff in her individual and representative capacity.  The Court finds the requested attorneys' fees shall be reduced to 25% of the total settlement fund, or $14,375.00, and that the difference shall be added to the PAGA penalty fund.

Accordingly, IT IS HEREBY ORDERED that:

1. The motion for approval of the PAGA settlement (ECF No. 18) is GRANTED with a reduction in attorneys' fees;

2. The Court grants approval of the settlement in accordance with the terms of the Agreement and this order;

3. The parties shall carry out the terms of the Agreement and this order;

4. The settlement funds totaling $57,500.00, with a reduction in attorneys' fees, are authorized to be disbursed as follows:

   a. **$14,375.00** as Attorneys' Fees;

   b. **$10,519.50** as Costs to Plaintiff's Counsel;

   c. **$2,850.00** as Administration Costs;

   d. **$5,000** as an Incentive Payment to Plaintiff;

   e. **$18,566.62** as PAGA Penalties to the Labor and Workforce Development Agency; and

   f. **$6,188.88** as PAGA Penalties to Aggrieved Employees in equal shares;[12] and

---

[12] Before a reduction in attorneys' fees, the Net Settlement Amount to be disbursed to the Aggreieved Employees and LWDA totaled $21,880.50.  Adding the difference due to the reduction in attorneys' fees ($17,250.00 - $14,375.00 = $2,875.00), results in an increased PAGA penalty fund of $24,755.50.  75% of that amount for the LWDA is $18,566.62 ($24,755.50 x 0.75), and 25% of that amount for the aggrieved employees is $6,188.88 ($24,755.50 x 0.25).

5.     The Clerk of the Court is DIRECTED to ENTER JUDGMENT in favor of Plaintiff against Defendant and CLOSE the case.

IT IS SO ORDERED.

Dated:   **January 26, 2024**

UNITED STATES MAGISTRATE JUDGE